**The ROCK ISLAND BANK, Plaintiff,**

v.

**The AETNA CASUALTY AND SURETY COMPANY, Defendant, Third-Party Plaintiff-Appellant,**

v.

**William J. KEARNEY, Third-Party Defendant-Appellee.**

No. 81–2205.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1981.

Decided Nov. 9, 1982.

Rehearing Denied Dec. 15, 1982.

Jeffrey R. Tone, Sidley & Austin, Chicago, Ill., for defendant, third-party plaintiff-appellant.

Gary L. Griffin, McNeela & Griffin, Ltd., Chicago, Ill., for third-party defendant-appellee.

Before SPRECHER* and BAUER, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

This is a diversity case. The parties agree that Illinois law governs the critical issues.

### The Facts

Between January 19, 1968 and March 4, 1970, William J. Kearney was president of the Rock Island Bank (Rock Island). During his tenure, Kearney made and renewed certain loans and issued certain letters of credit allegedly in excess of his authority. Among the letters of credit was one issued June 5, 1969, by which Rock Island committed itself to purchase at maturity in 1971 a $400,000 note signed by the corporation to which the letter was addressed.[1]

---

* Circuit Judge Robert A. Sprecher heard oral argument, participated in conference, and voted to affirm. He died on May 15, 1982, and did not participate in the preparation or approval of this opinion.

1. The text of this instrument is set out in *Bank of North Carolina, N.A. v. Rock Island Bank,* 570 F.2d 202, 204 (7th Cir.1978). This court determined that the instrument was a letter of credit, and we refer to it as such in this opinion.

Kearney was dismissed in 1970 for having exceeded his authority. As a result of Rock Island's investigation of his transactions, it became fully aware of its potential liability under the loans and letters of credit. On July 3, 1970, Rock Island notified its fidelity insurer, Aetna Casualty and Surety Company (Aetna), that it might file a claim under a banker's bond issued by Aetna. (Rock Island, however, did not actually submit a claim until 1976, because Aetna agreed to extensions.) In June, 1971, the $400,000 note matured, the maker defaulted, and the holder of the note, the Bank of North Carolina, N.A., presented it to Rock Island. Rock Island refused to purchase it and in 1975, the Bank of North Carolina brought suit against Rock Island. Defense of the case was tendered to Aetna, but Aetna refused, denying that such a claim came within the terms of the banker's bond. Rock Island consequently defended the case itself. Eventually, after lengthy litigation, including two appearances before this court,[2] judgment was entered against Rock Island in late 1980. Apparently the judgment was paid in early 1981.

In 1978, while the *Bank of North Carolina* litigation was pending, the present lawsuit was commenced by Rock Island against Aetna. Rock Island sought a declaratory judgment that any losses sustained as a result of the unauthorized loans made and letters of credit issued by Kearney were covered by certain fidelity bonds issued to Rock Island by Aetna, and sought recovery of the amounts lost. In turn, Aetna, in 1979, filed a third-party complaint against Kearney and Mr. and Mrs. Silver, for whose benefit the loans and letters of credit had allegedly been issued, requesting that in the event any judgment was entered against it and in favor of Rock Island, a similar judgment be entered in its favor against Kearney and the others. In response, Kearney pleaded that any action against him was barred by a five-year Illinois statute of limitations. Ill.Rev.Stat. ch. 83, § 16.

*Proceedings in the District Court*

The district court found merit to Kearney's defense and entered judgment in his favor. The judgment was made final pursuant to Rule 54(b), Fed.R.Civ.P. The unpublished opinion of the court began its analysis by noting that Aetna, as subrogee, was subject to all defenses which Kearney could have asserted against Rock Island, and that the central question in the case was the point at which a cause of action against Kearney accrued and the five-year statute of limitations began to run. Under Illinois law, the court said, ordinarily, where the claim arises out of a contractual relationship, the statute begins to run at the time of the breach, and where the claim arises as the result of a tort, the period does not begin until the time of injury.[3] Finding that Kearney's alleged actions, though tortious in nature, arose from his employment, which was clearly a contractual relationship, the court held that the statute commenced to run at the time of Kearney's alleged misconduct,[4] and the complaint against Kearney was barred.

In reaching its decision, the district court rejected Aetna's argument that the running of the statute of limitations should have

---

**2.** Rock Island asserted, successfully before the district court, that the 1969 instrument was an unenforceable contract of guaranty and not a letter of credit. This court reversed. *Bank of North Carolina, N.A. v. Rock Island Bank,* 570 F.2d 202 (7th Cir.1978). Rock Island asserted other defenses, including Kearney's lack of authority to execute the letter of credit. Judgment in favor of Rock Island was reversed here, *Bank of N.C. v. Rock Island Bank,* 630 F.2d 1243 (7th Cir.1980), and this court ordered entry of judgment in favor of Bank of North Carolina. The district court had found that Kearney did not have actual authority to execute the letter of credit, but this court deter- mined that Bank of North Carolina could rely on Kearney's apparent authority. 630 F.2d at 1251–52.

**3.** The parties have sometimes used the terms "contract rule" and "tort rule" to indicate whether the statute of limitations begins to run at the date of the breach of contract or the date damage is actually sustained. These terms are occasionally employed herein.

**4.** The district court referred to the year as 1970, the year in which Kearney's employment terminated. The correct date for the instant claim was June 5, 1969.

been tolled by some type of "discovery rule" until the claim against Kearney either was, or by exercise of reasonable diligence should have been, discovered.[5] The district court observed that it generally is not desirable to extend an already lengthy five-year statute of limitations and that the Illinois Supreme Court has not adopted the discovery rule as a general definition of the word "accrued" as used in the Illinois Limitations Act. Finding that both Rock Island and Aetna clearly had knowledge of the potential liability long before the five-year period expired, and that Aetna could have sought a declaratory judgment against Kearney within that time frame to preserve its claim against him, the court declined to apply the discovery rule.

Aetna appealed.

### The Merits

Aetna challenges the district court's holding in three principal respects. First, it claims that the facts of this case do not come within the terms of the rule normally applicable in Illinois to torts arising out of a breach of a contractual duty and that therefore Rock Island's tort claim to which Aetna is subrogated is not barred by the statute. Second, Aetna maintains that it has succeeded to Rock Island's right to bring a separate action against Kearney, not for tort or breach of contract, but for indemnification, and that that claim is not time-barred. Third, Aetna argues that aside from its rights as subrogee, it has an independent cause of action directly against Kearney for indemnification which is not precluded by the statute.[6]

### A.

Aetna recognizes, as indeed it must, that the Illinois cases cited by the district court state that where a tort arises out of a breach of a contractual duty, the period of limitations begins to run at the time the contract is breached, not at the time the damage is sustained or discovered. *See West America Insurance Co. v. Sal E. Lobianco & Son, Inc.,* 69 Ill.2d 126, 12 Ill.Dec. 893, 896, 370 N.E.2d 804, 807 (1977); *Dolce v. Gamberdino,* 60 Ill.App.3d 124, 17 Ill.Dec. 274, 277, 376 N.E.2d 273, 276 (1978); *Stevens v. O'Bryant,* 74 Ill.App.3d 239, 30 Ill. Dec. 170, 173, 392 N.E.2d 935, 938 (1979). Aetna argues, however, that these decisions are distinguishable because unlike the present case they did not involve *intentional* (as opposed to negligent) tortious conduct or arise out of an *employment* (as opposed to some other) type of contractual relationship. Assuming without deciding that Kearney's conduct was an intentional rather than inadvertent breach of duty, we are unable to find any support, in precedent or in policy, for the distinctions Aetna would make.

None of the three decisions relied upon by the district court *(West American Insurance, supra; Dolce, supra; Stevens, supra),* nor any other case of which we are aware involving a tort arising out of a breach of contract, *(see, e.g., Gates Rubber Co. v. U.S.M. Corp.,* 508 F.2d 603 (7th Cir.1975); *Del Bianco v. American Motorists Ins. Co.,* 73 Ill.App.3d 743, 29 Ill.Dec. 563, 392 N.E.2d 120 (1979), has expressly drawn a distinction, for Illinois statute of limitations purposes, based on whether the contractual re-

---

**5.** We are not sure what Aetna would have accomplished by resort to a "discovery rule." Rock Island knew of Kearney's relevant acts by July, 1970, and knew of the demand by the Bank of North Carolina by June, 1971. Aetna filed its complaint against Kearney more than five years after those dates. On appeal Aetna has not challenged the district court's rejection of the discovery rule, and we need not pursue the question.

In view of our decision that the district court properly applied the contract rule, it is unnecessary to decide the date of injury to Rock Island. In the district court Aetna argued at

one stage that it was no earlier than October, 1975 when the Bank of North Carolina sued Rock Island, and at another stage argued that it occurred when Rock Island paid the judgment, after December 16, 1980.

**6.** We have referred to Aetna's subrogation to Rock Island's claims and Aetna's asserted direct right to indemnification as if Aetna had already paid Rock Island on the bonds. Those rights may still be conditional. Aetna's obligation to pay was and may still be at issue in the principal action.

lationship was one of employment or whether the tortious action was intentional as opposed to negligent. This in itself suggests that no such distinctions should be made.[7]

Neither anything in the cases, nor reasons of policy support the proposed distinctions.

In *Dolce v. Gamberdino, supra,* plaintiff sued her attorneys for failure to give her timely advice concerning a Workmen's Compensation claim she might have filed on account of her husband's death. The duty breached arose out of contracts of employment, albeit professional. The court held that the actions were barred since filed more than five years after the alleged breaches.

Aetna does not persuade us that there is a reason for a distinction between the contractual relationship of an attorney and client and a bank and bank president.

Additionally, Aetna argues that *Gilliland v. Allstate Ins. Co.,* 69 Ill.App.3d 630, 26 Ill.Dec. 444, 388 N.E.2d 68 (1979), is directly on point, and supports a finding that the contract rule as to the running of the statute does not apply to torts arising out of employment disputes.

In *Gilliland,* the defendant allegedly orally agreed in 1954 to employ plaintiff until he reached retirement age 36 years later. After being discharged in 1972, plaintiff commenced suit claiming, among other things, breach of contract and fraudulent misrepresentation. The court held that an action for breach of the oral contract was precluded by the statute of frauds. As to the misrepresentation claim, defendants had argued that it was barred by the five-year statute of limitations because plaintiff's action had accrued between 1956 and 1959 when plaintiff first learned that defendant terminated other employees without cause. The court held that plaintiff did not sustain any injury until he was discharged in 1972, that it was not until then

that his cause of action for fraudulent misrepresentation accrued, and that therefore his action was not barred by the statute.

*Gilliland* is not analogous to the present case for while it involved a tort arising in an employment context, the tort was not one which also constituted a breach of the employment contract.

In *Del Bianco, supra,* plaintiff alleged counts charging fraud and negligence. The court held the complaint was barred by the statute of limitations, measuring the period from the date of breach. It did not distinguish between the fraud and negligence claims.

As then Judge John Paul Stevens wrote for this court in *Gates Rubber Co. v. U.S.M. Corp.,* 508 F.2d 603, 611 (7th Cir.1975), applying Illinois law:

[I]t is useful to note that a statute of limitations effectuates two quite different policies. First, such a statute is intended to protect defendants from false or fraudulent claims that might be difficult to disprove if not brought until after relevant evidence has been lost or destroyed and witnesses have become unavailable. Second, entirely apart from the merits of particular claims, the interest in certainty and finality in the administration of our affairs, especially in commercial transactions, makes it desirable to terminate contingent liabilities at specific points in time. It is this interest in finality which underlies the description of a limitations act as a "statute of repose."

These considerations of policy are not without force in the present case. Were Aetna's view accepted, the statute of limitations would not begin to run until late 1980—more than ten years after Kearney's wrongful actions became known to both Rock Island and Aetna—and would not expire until 1985. A period that long surely begins to infringe upon both public and private interests in finality and certainty,

---

**7.** All the more so is this true in view of the fact that the Illinois rule in question is not of recent origin, but appears to date back to before the turn of the century. *See Pennsylvania Co. v. Chicago, Milwaukee & St. Paul Ry. Co.,* 144 Ill.

197, 33 N.E. 415 (1893) ("In case of torts arising *quasi ex contractu* and in actions for breach of contract, the statute generally begins to run at the date of the tort or breach, and not when damages ensue").

and raises concern about the fairness of confronting a defendant with stale or fabricated evidence.

Aetna does not deny that Kearney could have been sued for a declaratory judgment as early as 1970. Rock Island and Aetna knew as early as 1971, when the Bank of North Carolina demanded payment, that the transactions in question, all of which related to the Silvers and their corporation which defaulted on the $400,000 note, involved a substantial likelihood of liability. As of that point, even if the statute is measured from the date of each wrongful act, Rock Island still had several years within which to commence suit as to each of the transactions.

■ In view of the foregoing, we conclude that the district court properly interpreted the Illinois statute of limitations, and correctly held that Aetna's subrogated claim against Kearney for tortious breach of contract was barred.

### B.

Evidently in the district court everyone, including Aetna, analyzed Rock Island's claim against Kearney as a claim for damages for his tortious acts, causing eventual injury to Rock Island. For the first time on appeal Aetna argues that the claim should be viewed as one for indemnity for liability imposed on Rock Island by the unauthorized act of its agent.

Accordingly, says Aetna, its third-party complaint against Kearney is not barred because Rock Island's liability to the Bank of North Carolina was not determined until September 22, 1980 when this court ordered the entry of judgment against Rock Island. Aetna cites 21 Illinois Law and Practice, *Indemnity* § 18 (1977) and *Ozark Airlines v. Fairchild-Hiller Corp.,* 71 Ill.App.3d 637, 28 Ill.Dec. 277, 390 N.E.2d 444 (1979). *See also Klatt v. Commonwealth Edison Company,* 55 Ill.App.2d 120, 204 N.E.2d 319, 328 (1964), *rev'd on other grounds,* 33 Ill.2d 481, 211 N.E.2d 720 (1965); Restatement of Restitution § 96 (1937).

■ The theory now being urged was never presented to the district court, and hence is deemed waived for purposes of appeal. *See Country Fairways, Inc. v. Mottaz,* 539 F.2d 637, 642 (7th Cir.1976) ("an issue not presented in the court below cannot be raised for the first time on appeal and form the basis for reversal"); *Stern v. United States Gypsum Co.,* 547 F.2d 1329, 1333 (7th Cir.1977).

Aetna acknowledges that this theory of relief was never brought to the attention of the district court. It attempts, however, to escape the effect of the waiver rule by arguing that it "never had a reasonable opportunity to raise the Rock Island right of indemnification,"[8] because Kearney's motion for summary judgment did not focus on that question, but instead simply sought to apply the statute of limitations to Rock Island's tort action against Kearney.

We find this argument unpersuasive. To begin with, it is unfair to say that Kearney's motion focused solely on the viability of a claim for damages. The motion itself broadly asserted as an affirmative defense that "[t]he Third-Party complaint is barred by the applicable statute of limitations," and Kearney's memorandum in support of the motion claimed that this was so "[n]o matter how the cause of action . . . is characterized." Faced with this assertion, Aetna was obliged to call to the court's attention any theory of recovery sufficient to defeat the motion, in order that the court would have a fair opportunity to render a correct decision. *Cf.* [1981 Interim Binder] Fed.Proc.L.Ed. § 62.537 ("opposing party must show that he has a plausible ground for maintaining the cause of action alleged in his complaint"). Aetna could have raised the subject of Rock Island's right to indemnification in its memorandum opposing Kearney's motion for summary judgment— which, in fact, is the point at which it presented its theory of independent (nonsubrogated) right to indemnification—or even in a post-decision motion for reconsideration of its grant of the motion. Because

---

8. Reply brief, at 14.

Aetna did not call the subject to the court's attention, the district court was totally deprived of an opportunity to pass upon the question.

### C.

 Finally, Aetna argues that as an insurer it has an independent cause of action against Kearney for indemnification, because the law implies a contract of indemnity in favor of a person who without fault is exposed to liability and compelled to pay damages on account of the negligence or otherwise tortious conduct of another. This cause of action, it maintains, is not barred by the five-year statute of limitations since such a claim does not accrue until payment is made by the insurer—in this case, entry of judgment against and payment by Aetna to Rock Island.

This argument was presented to the district court (though the court did not address it), and hence is properly preserved for appeal. However, we find the argument to be without merit.

Aetna fails to cite, and we are not otherwise aware of, any case in which an *insurer* has been allowed to bring suit, based on a claim of indemnity, after the insured's period of limitations has expired. As counsel for Kearney point out, the argument that an insurer has an independent cause of action for indemnity has been recently discussed in detail and rejected by the Second Circuit, in *Great American Ins. Co. v. United States*, 575 F.2d 1031 (2d Cir. 1978). We think the reasoning of that case sufficiently important to quote at length here:

> The parties to this appeal are in agreement that if the appellant insurer's claim is only as a subrogee of its insured, then its rights here are limited to those of its subrogor and its claim is time-barred in this case. The only issue then is whether Great American's claim arises solely out of its derivative right of subrogation or is supplemented by an independent claim for indemnification.
> ... The [latter] theory is admittedly novel. There is not a single reported case

in American jurisprudence cited by appellant or discovered by this court which holds that upon an insurance carrier's payment to its insured, the insurer becomes vested with a claim arising out of an implied contract of indemnity with the tortfeasor who caused the damage necessitating payment by the carrier to the insured. On the contrary, the authorities and the cases unanimously hold that the insurer's recovery is premised exclusively upon subrogation which, while equitable in nature, is also expressly provided for in the insurance contract here.

> . . . .

> Appellant here has confused the principle of indemnity which underlies subrogation with an implied action for indemnification—which is completely distinguishable.

> By the subrogation of the insurer is meant the substitution of the insurer in place of the insured for the purpose of claiming indemnity from a third person for the loss covered by insurance.

E. Patterson, Essentials of Insurance Law, 147, 148 (2d ed.1957) (emphasis omitted). Subrogation, therefore, is based upon the principle of indemnity but is an exclusively derivative remedy which depends upon the claim of the insured and is subject to whatever defenses the tortfeasor has against the insured. E.g., Vance on Insurance, *supra*, § 134.

> On the other hand, the obligation to indemnify another is defined by § 76 of the Restatement of Restitution.

> A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct.

In comment b of § 76 those situations to which the rule of indemnity is inapplicable are described.

> The rule does not apply to a payment by a person who guarantees or *insures another* against a payment for which

the guarantor or insurer is not himself liable since the duty of indemnity and *the right to subrogation of such persons are wholly dependent upon the contract or agreement with the other.*

. . . .

The appellant here is of course compensated for insuring risks. Presumably it is fully conversant with the terms of the Standard Fire Insurance Policy and recognizes that any delay may jeopardize its right to obtain indemnity from a third party by reason of statutory time bars. If these prove to be onerous the remedy is legislative and certainly not the judicial creation of the unprecedented remedy urged upon us.

*Id.* at 1033–35. (Footnote omitted; emphasis in *Great American Ins. Co.*)

We find the reasoning of *Great American Ins. Co.* persuasive, and hold that Aetna does not have an independent cause of action against Kearney for indemnification.

Accordingly, the judgment appealed from is AFFIRMED.