**MARYLAND PEOPLE'S COUNSEL, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**LACLEDE GAS COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

Nos. 85–1029, 85–1086.

United States Court of Appeals, District of Columbia Circuit.

Decided April 19, 1985.

Motions to Intervene Granted in Part and Denied in Part April 19, 1985.

On Motion for Stay of Orders and Petitions for Interventions

Before MIKVA, GINSBURG and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

In the first of the above captioned cases, Maryland People's Counsel ("MPC") chal-

lenges under 15 U.S.C. § 717r(b) (1982) a natural gas special marketing program established by the Federal Energy Regulatory Commission ("FERC") pursuant to agency orders authorizing such programs. *Tenneco Oil Co., et al., Order Amending Certificates of Convenience and Necessity, Extending Limited-Term Abandonments, and Establishing Procedures,* Docket Nos. CI83–269–000, etc., 28 F.E.R.C. (CCH) ¶ 61,383 (1984); *Tenneco Oil Co., et al., Order Granting in Part and Denying in Part Rehearing, Clarifying Certificate Order and Granting Intervention,* Docket Nos. CI83–269–000, etc., 29 F.E.R.C. (CCH) ¶ 61,334 (1984). We have before us in that case a motion for stay of the orders, and petitions for intervention by numerous parties to the proceedings below. In the second captioned case, brought by Laclede Gas Company challenging another special marketing program established pursuant to the same orders, we have before us a motion to consolidate with the first suit, a motion for stay of the orders, and numerous petitions for intervention.

At the time these two appeals were filed, we already had before us Case No. 84–1019, *Maryland People's Counsel v. FERC* (D.C.Cir. argued Jan. 22, 1985), challenging a special marketing program established for the prior year, pursuant to predecessor orders. *Columbia Gas Transmission Corp. and Columbia Gulf Transmission Corp., Findings and Order After Statutory Hearing Granting Interventions and Issuing Certificate of Public Convenience and Necessity,* Docket No. CP83–452–000, 25 F.E.R.C. (CCH) ¶ 61,220 (1983); *Columbia Gas Transmission Corp. and Columbia Gulf Transmission Corp., Order Clarifying Prior Order and Granting Rehearing for the Purpose of Further Consideration,* Docket No. CP83–45–001, 25 F.E.R.C. (CCH) ¶ 61,401 (1983); *Columbia Gas Transmission Corp. and Columbia Gulf Transmission Corp., Order Clarifying Prior Orders and Denying Rehearing,* Docket No. CP83–452–001, 26 F.E.R.C. (CCH) ¶ 61,031 (1984). In that case, in pursuance of our duty to satisfy ourselves of our jurisdiction, *Bouchet v. National Urban League, Inc.,* 730 F.2d 799, 805 (D.C. Cir.1984), we raised on our own initiative, and received briefing upon, several questions pertaining to the standing of MPC to sue. Because granting either the motions to intervene in MPC's suit or Laclede's motion for consolidation with that suit seemed inappropriate if, by reason of lack of standing, we lacked jurisdiction over MPC's appeal, *see Simmons v. ICC,* 716 F.2d 40, 46 (D.C.Cir.1983), we deferred ruling on the motions until the standing issue could be resolved. We here set forth our opinion on the standing point common to both MPC appeals.

We were initially concerned that MPC's authorizing statute did not empower the agency to appear before this court. The relevant provision of Maryland law authorizes the agency "to appear before the [Maryland State Public Service] Commission *and the courts* ... in all matters or proceedings over which the Commission has original jurisdiction" (which is not this case), but more generally only to "appear before any federal or State *agency* as necessary to protect the interests of residential and noncommercial users." MD. ANN.CODE art. 78, § 15 (1980) (emphasis added). We would normally consider the term "agency," especially when used in such close proximity to specific reference to "courts," not to include Article III courts.

We have concluded, however, that the question of MPC's authorization under state law does not go to our jurisdiction. *See Summers v. Interstate Tractor and Equipment Co.,* 466 F.2d 42, 50 (9th Cir. 1972) ("The question of a litigant's capacity or right to sue or to be sued generally does not affect the subject matter jurisdiction of the district court"). And since none of the parties to the instant action raised the issue prior to our request for supplemental briefing, we will deem it to have been waived. *Cf.* C. WRIGHT & A. MILLER, FEDERAL RULES OF CIVIL PROCEDURE § 1295 (1969) (suggesting that objections to capacity can be treated as waived in the district court if not put

in issue by a responsive pleading). Lest this punctilious disposition leave the erroneous impression that Maryland People's Counsel is careless of its jurisdiction, we note by way of dictum that a case decided by the Maryland courts, whose word on this issue is conclusive, has held that the authorizing legislation permits MPC "to raise and advance the interests of residential and noncommercial users in the appropriate forum, including the courts." *Keane v. Heintz*, No. A–61447/81295303, slip. op. at 2 (Cir.Ct. for Baltimore City, Apr. 10, 1984). While that case pertained to appearance in state rather than federal court, we see no way the statute can be interpreted to make a distinction between the two.

▮▮▮ A separate question, however, is whether MPC meets the standing requirements of federal law. MPC does not purport to purchase any of the natural gas affected by the Commission's special marketing program, but seeks to represent, in its capacity as a state agency, the interests of those citizens of Maryland who do. A state's interest in those aspects of the welfare of its citizens secured and furthered by government—that is, a state's so-called "quasi-sovereign" interest—is unquestionably sufficient to confer standing upon the state as *parens patriae*. *See, e.g., Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982); *Missouri v. Illinois*, 180 U.S. 208, 21 S.Ct. 331, 45 L.Ed. 497 (1901). However, "[a] State does not have standing as *parens patriae* to bring an action against the Federal Government," *Alfred L. Snapp & Son*, 458 U.S. at 610 n. 16, 102 S.Ct. at 3270 n. 16, *citing Massachusetts v. Mellon*, 262 U.S. 447, 485–86, 43 S.Ct. 597, 600–01, 67 L.Ed. 1078 (1923). Thus, this court has denied *parens patriae* standing for a state suit against the Small Business Administration. *Commonwealth of Pennsylvania v. Kleppe*, 533 F.2d 668 (D.C.Cir.1976).

Here, however, MPC does not rely exclusively upon the general doctrine of *parens patriae*, but appeals to a statutory conferral of standing by the Natural Gas Act. 15 U.S.C. § 717r(b) provides that "[a]ny party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order ... in the United States Court of Appeals for the District of Columbia...." In turn, the provision specifying who may be a "party to a proceeding" states:

> In any proceeding before it, the Commission ... may admit as a party any interested State, State commission, municipality or any representative of interested consumers or security holders, or any competitors of a party to such proceeding, or any other person whose participation in the proceeding may be in the public interest.

15 U.S.C. § 717n(a). The Act defines "municipality" as "a city, county, or other political subdivision *or agency of a State*," 15 U.S.C. § 717a(3) (emphasis added). The special solicitude for states and state agencies is also reflected in the provision governing those who may apply for rehearing, which is a prerequisite for judicial review. 15 U.S.C. § 717r(a) allows "[a]ny person, *State, municipality, or State commission* aggrieved by an order" to apply for a rehearing (emphasis added).[1]

---

1. The sentence of this subsection that makes application for rehearing a condition of entitlement to judicial review provides only that "[n]o proceeding to review any order of the Commission shall be brought *by any person* unless *such person* shall have made application to the Commission for a rehearing thereon" (emphasis added). Since 15 U.S.C. § 717a defines "person" as "includ[ing] an individual or a corporation"; and also contains separate definitions of "corporation," "State" and "municipality"; it could be argued that the failure to repeat the words "State, municipality, or State commission" in this sentence conditioning judicial review reflects an intent to dispense with the application-for-rehearing requirement for those entities. An opinion of this court has considered and rejected that argument. *See Public Service Comm'n of New York v. FPC*, 543 F.2d 757, 774 n. 116 (D.C.Cir.1974). It is even less plausible that the lack of parallelism reflects a congressional expectation that state agencies cannot obtain judicial review (so that the precondition of application for rehearing would be pointless), since no one contends that review is precluded

It seems to us inconceivable that the specific provision of party and rehearing status for states and state agencies envisioned that these entities would be particularly likely purchasers of natural gas; to the contrary, it was evidently designed to recognize precisely the interest of the states in protecting their citizens in this traditional governmental field of utility regulation—that is, the states' *parens patriae* interest. We think it unavoidable, moreover, that the reference in the judicial review provision to a "party to a proceeding under this chapter aggrieved by an order" includes aggrievement by reason of impairment of the *parens patriae* interest acknowledged earlier. The question before us, then, is whether *Massachusetts v. Mellon*'s holding that the *parens patriae* interest is inadequate to support standing in suits against the federal government applies even where Congress has said otherwise. That is, whether *Massachusetts v. Mellon* embodies part of what the Supreme Court has called the "core component" of the constitutional doctrine of standing, *Allen v. Wright*, — U.S. —, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984), or rather part of the "prudential component," *id.*— *i.e.*, an element that the courts must dispense with if Congress so provides. We think the latter.

It is unquestionable that a state, in its *parens patriae* capacity, does qualify as "personally . . . suffer[ing] some actual or threatened injury," *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982), which is the only portion of what the Supreme Court has identified as the "irreducible minimum" of the Article III requirements, *id.*, at issue here. Otherwise the numerous cases allowing *parens patriae* standing in suits not involving the federal government would be inexplicable. *See, e.g., Alfred L. Snapp & Son* and *Missouri v. Illinois, supra. Massachusetts v. Mellon* found that interest inadequate to

support standing in suit against the federal government for the following reason:

> [T]he citizens of Massachusetts are also citizens of the United States. It cannot be conceded that a State, as *parens patriae*, may institute judicial proceedings to protect citizens of the United States from the operation of the statutes thereof. While the State, under some circumstances, may sue in that capacity for the protection of its citizens (*Missouri v. Illinois*, 180 U.S. 208, 241 [21 S.Ct. 331, 344, 45 L.Ed. 497]), it is no part of its duty or power to enforce their rights in respect of their relations with the Federal Government. In that field it is the United States, and not the State, which represents them as *parens patriae*, when such representation becomes appropriate; and to the former, and not to the latter, they must look for such protective measures as flow from that status.

262 U.S. at 485–86, 43 S.Ct. at 600–01. This expresses a concern for protecting the powers of the federal government vis-a-vis the states. The core component of standing, however, has been said to have, exclusively, a different purpose: "[T]he law of Art. III standing is built on a single basic idea—the idea of separation of powers." *Allen v. Wright*, 104 S.Ct. at 3325.

The prerogative of the federal government to represent the interests of its citizens, unlike the prerogatives of the three separate federal branches to perform their constitutionally assigned roles, is not endangered so long as Congress has the power of conferring or withholding standing. This consideration is not conclusive, of course, since what is at issue may be not only a *prerogative* but to some extent also an *obligation*—so that Congress's willingness to cede some portion of this federal function to the states is not necessarily any more effective than would be its willingness to cede some of its legislative function to the courts through a grant of standing which violates the separation of powers. When added, however, to the Supreme Court's failure to assign any element of

where the state agency is an actual purchaser of    gas.

federalism to the "core" standing requirement, it suffices to make us confident of the outcome on the particular facts of the present case.

 Our holding is a narrow one. We do not conclude that the congressional power to confer *parens patriae* standing is absolute. Even assuming that the separation of powers constitutes the only bar, permitting some state actions on traditional *parens patriae* grounds might conceivably implicate separation-of-powers concerns; and statutory alteration of the traditional *parens patriae* criteria, *see Alfred L. Snapp & Son, supra,* might well do so. But at least where the state meets those traditional criteria; where the citizen interests represented are concrete interests which the citizens would have standing to protect in the courts themselves;[2] and where the subject of challenge is Executive compliance with statutory requirements in a field where the federal government and the states have long shared regulatory responsibility; we have no doubt that congressional elimination of the rule of *Massachusetts v. Mellon* is effective.

Our holding today is in accord with our dictum in *Pennsylvania v. Kleppe,* 533 F.2d 668, 678 n. 55 (D.C.Cir.1976), that natural gas cases "raise no question of *parens patriae* standing, since the Natural Gas Act itself provides for state standing to challenge FPC orders concerning natural gas." While we are aware of no case allowing state standing with specific discussion of the issue, we are confirmed in our view by the fact that a number of suits against FERC and its predecessor brought by states apparently in a *parens patriae* capacity have been entertained. *See, e.g., Wisconsin v. FPC,* 373 U.S. 294, 83 S.Ct. 1266, 10 L.Ed.2d 357 (1963); *Public Service Commission of New York v. FPC,* 257 F.2d 717, 720 (3d Cir.1958), *aff'd, Atlantic Refining Co. v. Public Service Commission of New York,* 360 U.S. 378, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1959); *Office of Con-*

*sumers' Counsel v. FERC,* 655 F.2d 1132 (D.C.Cir.1980).

For the reasons stated, we conclude that No. 85–1029 is properly before us. We grant the subject petitions to intervene in Nos. 85–1029 and 85–1086 with four exceptions, as noted in the accompanying orders, and grant the motion to consolidate the two cases. All further proceedings on these appeals are stayed pending our disposition of No. 84–1019.

*So ordered.*

---

**2.** *Cf. Barnes v. Kline,* 759 F.2d 21, 49 n. 8, 2d ¶ (D.C.Cir.1985) (Bork, J., dissenting) (suggest-

ing that this is a constitutional prerequisite to *parens patriae* standing).