SERVICE EMPLOYEES INTERNATIONAL UNION HEALTH AND WELFARE FUND, et al., Appellees,

v.

PHILIP MORRIS INCORPORATED, et al., Appellants.

The Republic of Guatemala, Appellant,

v.

The Tobacco Institute, Incorporated, et al., Appellees.

Nos. 00–7023, 00–7093 to 00–7100, 00–7118 and 00–7120.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 21, 2001.

Decided May 22, 2001.

Herbert M. Wachtell argued the cause in No. 00–7093 for appellants. With him on the briefs were Peter C. Hein, David S. Eggert, Timothy M. Broas, Michael K. Atkinson, Robert F. McDermott, Jr., Paul S. Ryerson, Robert H. Klonoff, Paul Reichert, Kenneth N. Bass, Leigh Hyer, Janet L. Goetz, Joseph Barloon, Keith A. Teel, D. Edward Wilson, Michael B. MacWilliams, Peter A. Woolson, Judah Best and John Parker Sweeney. Newman T. Halvorson, Jr. entered an appearance.

Michael C. Spencer argued the cause in No. 00–7093 for appellees. With him on the brief were Daniel Edelman and Roger M. Adelman.

Arthur R. Miller argued the cause in No. 00–7023 for appellants. On the briefs for appellants and amicus curiae Guatemalan National League Against Cancer were George M. Fleming, Sylvia Davidow, Andres C. Pereira, Richard M. Martin, Jr., Nicholas Gilman, and Jonathan S. Massey.

Herbert M. Wachtell argued the cause in No. 00–7023 for appellees. With him on the brief were Peter C. Hein, Timothy M. Broas, Michael K. Atkinson, Robert F. McDermott, Jr., Paul S. Ryerson, Kenneth N. Bass, Leigh Hyer, Garyowen P. Morrisroe, Thomas J. McCormack, Timothy M. Hughes, Robert E. Scott, Jr., Joseph M. McLaughlin, Gene E. Voigts, Richard L. Gray, John Vanderstar and Judah Best. Keith A. Teel, David Gruenstein, Daryl L. Joseffer, Michael A. Schlanger, Peter A. Woolson, and D. Edward Wilson, Jr. entered appearances.

Robin S. Conrad and Kenneth S. Geller were on the brief in No. 00–7023 of amicus curiae The Chamber of Commerce of the United States.

Before: WILLIAMS, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

In these two appeals, the court must determine whether the plaintiffs have demonstrated proximate cause in seeking, on an aggregate basis, to recover costs incurred as a result of paying for the health care needs of individual smokers. The complaints allege conspiracy and fraud in connection with federal antitrust and racketeering ("RICO") claims as well as antitrust claims under District of Columbia law and common law claims. Similar claims have been considered and rejected as too remote by seven other circuits. Because we agree with the other circuits that the alleged injuries of the third-party payors are too remote to have been proximately caused by the defendants' alleged conduct, we reverse the denial of the motion to dismiss with respect to the RICO and fraud claims in *Service Employees International Union Health and Welfare Fund v. Philip Morris Inc.*, 83 F.Supp.2d 70 (D.D.C.1999) (*"Service Employees"*), and otherwise affirm the dismissal of the complaints in *Republic of Guatemala v. Tobacco Institute, Inc.*, 83 F.Supp.2d 125 (D.D.C.1999) (*"Guatemala"*).

## I.

### A.

In *Service Employees*, several labor-management health trust funds ("the funds"), *see* 29 U.S.C. § 186(c)(5) (1994), sued Philip Morris, other tobacco companies, and other entities related to the tobacco industry, alleging a fraudulent scheme to preserve their control of the cigarette market and to avoid the costs of

treating smoking-related diseases by counteracting smokers' efforts to quit, by impairing the ability of health care providers to reduce costs through effective smoking cessation programs and safer cigarettes, and by concealing the tobacco industry's active role in manipulating and perpetuating the resulting health care crisis. The funds seek to recover their payments for participants' smoking-related health care costs by "su[ing] in their own capacities, rather than asserting claims in subrogation on behalf of individual [f]und beneficiaries."

The district court granted the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) the funds' local and federal antitrust claims for lack of an antitrust injury and for failure to specify antitrust damages. *Service Employees*, 83 F.Supp.2d at 89–91. The court dismissed the funds' fraud claims without prejudice for failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b). *Id.* at 91–92. The district court also dismissed the funds' special duty, indemnity, and unjust enrichment claims. *Id.* at 92–94. Denying the motion to dismiss with respect to the funds' RICO claims, however, the district court accepted the funds' characterization of their injuries as "direct injuries to the trust assets," *id.* at 86, or harm "to their infrastructure and financial health and stability," *id.*, and rejected the view that such damages ˙are entirely derivative of the harm suffered by the funds' beneficiaries, *id.* at 89. While the district court acknowledged the analytical framework provided by the Supreme Court in *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) ("*AGC*"), and *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), it addressed proximate cause in terms of foreseeability and direct conse-

quences, guided by the two-part test set forth in the *Restatement (Second) of Torts* § 431 (1965). *Service Employees*, 83 F.Supp.2d at 80–83. The district court concluded that foreseeable harm to the funds stemming from defendants' alleged conduct was "obvious," *id.* at 84, and resolved difficulties otherwise posed by the nature of the funds' claims by invoking "the inherent ability and flexibility of our common-law based legal system to respond to the demands of a case as difficult as this," *id.* at 79–80.

The defendants, in seeking reversal on the RICO and fraud claims, rely principally on what they characterize as "150 years of controlling precedent" regarding proximate cause under the common law that the Supreme Court's decisions in *AGC* and *Holmes* have incorporated in analyzing standing to pursue federal antitrust and RICO claims. *Holmes*, 503 U.S. at 267–70, 112 S.Ct. 1311; *AGC*, 459 U.S. at 529–35, 103 S.Ct. 897. In addition to relying on the rule that one who pays the medical expenses of another may not recover in a direct suit against the tortfeasor but must proceed by way of subrogation, *cf. Indus. Risk Insurers v. Creole Prod. Servs., Inc.*, 746 F.2d 526, 528 (9th Cir.1984); *Rock Island Bank v. Aetna Cas. & Sur. Co.*, 692 F.2d 1100, 1106–07 (7th Cir.1982); *Great Am. Ins. Co. v. United States*, 575 F.2d 1031, 1033–34 (2d Cir.1978), the defendants rely on the decisions of the circuit courts of appeal that have rejected such third-party payor suits against the tobacco industry. The funds, in turn, appeal the dismissal of all of their other claims save for their special duty and indemnity claims.

**B.**

The Republics of Guatemala, Nicaragua, and Ukraine ("the nations") seek to distinguish their claims from those of the typical third-party payor whose fate is sealed by

the decisions of other circuits. They contend that as sovereign nations constitutionally (or otherwise legally) obligated to provide free health care and other forms of social welfare to their residents, or at least to those who cannot afford to pay for such benefits, they have suffered economic harms to their treasuries that are independent of any harms allegedly suffered by their residents as a result of smoking defendants' products. The nations maintain that they are not only the best but the only plaintiffs who can recover for the economic harm allegedly suffered by their public fiscs. Further, they claim · a purported right to sue in *parens patriae* that they view as overcoming concerns about their standing to recover their economic losses under RICO and the federal antitrust laws.

The district court dismissed the complaints in their entirety. *Guatemala*, 83 F.Supp.2d at 128.[1] Without adopting the defendants' position that the nations are merely complaining of a purely derivative harm, and acknowledging that the doctrine of remoteness affords courts flexibility in determining whether the alleged injury is remote from the alleged misconduct, the district court considered it "abundantly clear that the injury that [the nations] purportedly suffered occurred only as a consequence of the harm to individual smokers." *Id.* at 129. The district court concluded that the "tortured path" from the defendants' alleged wrongdoing to the nations' increased expenditures "demonstrates that [the nations'] claims are precisely the type of indirect claims that the proximate cause requirement is intended

to weed out." *Id.* at 130 (quoting *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris Inc.*, 171 F.3d 912, 930 (3d Cir.1999) ("*Steamfitters*")).

In seeking reversal, the nations contend that the district court misapplied the *Holmes* factors, ignored the foreseeable nature of the harms alleged as well as public policy considerations in conducting its proximate cause analysis, failed to address the alternate chain of causation alleged by the nations, and failed to acknowledge the nations' unique status as foreign sovereigns. Essentially, the nations urge this court to adopt the district court's proximate cause analysis in *Service Employees* and to give special weight to their right to sue as *parens patriae*. They also contend that the district court erred in not allowing them to replead their fraud and RICO claims. *See Guatemala*, 83 F.Supp.2d at 135 n. 8.

## II.

Our review of the district courts' partial denial and grant of the defendants' motions to dismiss the complaints under Federal Rule of Civil Procedure 12(b)(6) is *de novo. See Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir. 1994). Because the relevant legal analysis appears in several comprehensive decisions of other circuit courts of appeal, our analysis is brief.

█ To date, seven circuit courts of appeal have rejected claims similar to those brought by the funds and the nations by generally concluding that the alleged injuries are too remote and, therefore, are not redressable for lack of proximate cause.[2]

---

1. By unpublished order, the district court dismissed the complaints of Nicaragua and the Ukraine for the reasons in *Guatemala*.

2. *Lyons v. Philip Morris Inc.*, 225 F.3d 909 (8th Cir.2000); *United Food and Commercial Workers Unions, Employers Health and Welfare Fund v. Philip Morris Inc.*, 223 F.3d 1271

(11th Cir.2000); *Tex. Carpenters Health Benefit Fund v. Philip Morris Inc.*, 199 F.3d 788 (5th Cir.2000); *Int'l Bhd. of Teamsters, Local 734 Health and Welfare Trust Fund v. Philip Morris Inc.*, 196 F.3d 818 (7th Cir.1999) ("*Teamsters*"); *Laborers Local 17 Health and Benefit Fund v. Philip Morris Inc.*, 191 F.3d 229 (2d Cir.1999) ("*Laborers Local*"); *Oregon*

In *Service Employees,* the funds seek to distinguish these cases principally on the ground that the circuits have engaged in an overly mechanical analysis of proximate cause and ignored congressional intent and important public policies underlying RICO. Pointing to RICO's history and purpose, *see Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 519–20, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (Marshall, J., dissenting), the funds maintain that Congress intended to afford a remedy where, as here, in the funds' words, "people, with common law claims, . . . were not able to adequately oppose an industry of companies conspiring together to commit misconduct more akin to the racketeering of organized crime than to garden-variety product liability torts and isolated instances of fraud or deceit." Health care payors, by contrast, "were the type of business entities that suffered . . . economic injuries, and that had the size and power to mount credible attacks as private attorneys general to assist governmental law enforcement efforts." Therefore, *Holmes, AGC, Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), and similar cases are distinguishable and properly understood as the Supreme Court's effort to choose among multiple possible plaintiffs that have suffered economic injury and to select only the most efficient and directly injured plaintiff. Furthermore, the funds contend that a proper analysis of the *Holmes* factors demonstrates that they have standing to pursue their RICO claims against the tobacco industry. In a somewhat similar vein, the nations contend that the district court's conclusion in *Guatemala* failed to recognize the unique status of the nations as foreign sovereigns seeking to protect their governments' treasuries through *parens patriae* actions.

The funds and the nations err in assuming that the proximate cause analysis called for by *AGC* and *Holmes* is a quest for the "best" (or, realistically, "least bad") plaintiff. Rather, the Supreme Court has insisted on an appropriate plaintiff, namely, a plaintiff whose alleged injury possesses a sufficiently direct causal relationship to the alleged wrongdoing. *See AGC,* 459 U.S. at 533–35, 103 S.Ct. 897; *see also Holmes,* 503 U.S. at 268–70, 112 S.Ct. 1311. The problem for the plaintiffs arises from long-standing common law principles which the Supreme Court has incorporated into the proximate cause requirement for purposes of determining standing to bring RICO and federal antitrust claims.

By relying on the analysis of RICO's legislative history set forth in Justice Marshall's dissenting opinion in *Sedima,* 473 U.S. at 512–13, 105 S.Ct. 3275, an approach rejected by the Court's majority, *id.* at 497 n. 15, 105 S.Ct. 3275, the funds seek to show that in enacting RICO Congress intended to adopt an analysis of the proximate causation requirement different from that identified by the Supreme Court in *Holmes,* 503 U.S. at 267–70, 112 S.Ct. 1311. There may be some tension between the *Holmes* (RICO) factors, which might be read simply to assert a single-factor direct-injury test that is merely supported by several policy factors, *see Holmes,* 503 U.S. at 269, 112 S.Ct. 1311, and the *AGC* (antitrust) approach, which balances the directness concerns along with other factors. *See AGC,* 459 U.S. at 537–45, 103 S.Ct. 897. This is not a pressing issue here, however, because it is not

*Laborers–Employers Health & Welfare Trust Fund v. Philip Morris Inc.,* 185 F.3d 957 (9th Cir.1999) (*"Oregon Laborers"*); *Steamfitters, Local Union No. 420 Welfare Fund v. Philip Morris, Inc.,* 171 F.3d 912 (3d Cir.1999) (*"Steamfitters"*); *see also Ass'n of Wash. Public Hosp. Dists. v. Philip Morris Inc.,* 241 F.3d 696 (9th Cir.2001) (*"Wash. Pub. Hosp."*); *Allegheny Gen. Hosp. v. Philip Morris Inc.,* 228 F.3d 429 (3d Cir.2000) (*"Allegheny"*).

outcome determinative inasmuch as the funds and the nations lose under a pure directness test and under a balancing of the *Holmes* factors.

■ The nations' assertion that they may proceed in *parens patriae* is a dubious assertion at best, for as the First Circuit pointed out in *Estados Unidos Mexicanos v. DeCoster*, 229 F.3d 332, 336 (1st Cir. 2000), *parens patriae* standing should not be recognized in a foreign nation (by contrast with a State in this country) unless there is a clear indication by the Supreme Court or one of the two coordinate branches of government to grant such standing. The nations offer no evidence of such intent. In any event, they fail to show that such status eliminates or adequately substitutes for proximate cause. Rather, the doctrine of *parens patriae* is merely a species of prudential standing, *see Md. People's Counsel v. FERC*, 760 F.2d 318, 321–22 (D.C.Cir.1985), and does not create a boundless opportunity for governments to seek recovery for alleged wrongs against them or their residents. *See, e.g., Pfizer, Inc. v. Lord*, 522 F.2d 612, 616 (8th Cir.1975).

Even were the court to view as oversimplified the defendants' reliance on the settled rule barring direct suits by third parties seeking to recover the costs of medical care paid on behalf of individuals injured as a result of an alleged tortfeasor's conduct,[3] application of the *Holmes* factors,[4] 503 U.S. at 269–70, 112 S.Ct. 1311, reveals that both the funds and the nations fail to demonstrate proximate cause. With respect to the first *Holmes* factor, the circuits have generally concluded that damages for such claims are highly speculative and difficult to calculate given the many other potential causes for the alleged financial injuries. *See Wash. Pub. Hosp.*, 241 F.3d at 703; *Allegheny*, 228 F.3d at 441–42;[5] *Laborers Local*, 191 F.3d at 239–40; *Oregon Laborers*, 185 F.3d at 964–65; *Steamfitters*, 171 F.3d at 928–29; *cf. Teamsters*, 196 F.3d at 823–24. Regarding the second *Holmes* factor, the circuits have concluded that allowing such claims to proceed would create a risk of multiple recoveries and necessitate complicated rules for apportioning damages between groups of plaintiffs removed at various levels from the tobacco industry's alleged wrongdoing. *See Wash. Pub. Hosp.*, 241 F.3d at 703; *Teamsters*, 196 F.3d at 823; *Laborers Local*, 191 F.3d at 240–41; *Oregon Laborers*, 185 F.3d at 965–66; *cf. Allegheny*, 228 F.3d at 442; *Steamfitters*, 171 F.3d at 933. The third *Holmes* factor, the circuits have generally concluded, cannot

---

**3.** *Cf. Indus. Risk Insurers*, 746 F.2d at 528; *Rock Island Bank*, 692 F.2d at 1106–07; *Great Am. Ins. Co.*, 575 F.2d at 1033–34.

**4.** In explaining that the common law required "some direct relation between the injury asserted and the injurious conduct alleged," *Holmes*, 503 U.S. at 268, 112 S.Ct. 1311, the Supreme Court characterized its decision in *AGC* as identifying three relevant considerations: (1) the need for sufficiently direct factual causation in order to be able "to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors"; (2) the avoidance of "complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts [so as]

to obviate the risk of multiple recoveries"; and (3) the assurance that "directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely." *Id.* at 269–70, 112 S.Ct. 1311 ("the *Holmes* factors").

**5.** The decisions of the Third and Ninth Circuits in *Allegheny* and *Washington Public Hospital* are instructive with respect to the nations' claims because, like the nations, the plaintiffs in both cases were legally obligated to directly provide health care to smokers who could not afford to pay for such services. *See Wash. Pub. Hosp.*, 241 F.3d at 700; *Allegheny*, 228 F.3d at 436, 443.

outweigh important policies underlying the first two *Holmes* factors, *see Steamfitters,* 171 F.3d at 933–34; *see also Oregon Laborers,* 185 F.3d at 964, and furthermore, individual smokers may be counted on to vindicate the public interests at stake in the third factor by asserting various theories of recovery against the tobacco industry. *See Wash. Pub. Hosp.,* 241 F.3d at 703; *Teamsters,* 196 F.3d at 823; *Laborers Local,* 191 F.3d at 241; *Oregon Laborers,* 185 F.3d at 964. In addition, the circuits have rejected the contention that specific intent is sufficient to demonstrate proximate cause, *see Allegheny,* 228 F.3d at 439; *Laborers Local,* 191 F.3d at 241–42; *Steamfitters,* 171 F.3d at 925, or that the foreseeable nature of the harms alleged is sufficient to satisfy the proximate cause requirement. *See Steamfitters,* 171 F.3d at 926. Furthermore, the Ninth and Third Circuits have rejected efforts to distinguish between third-party health care payors like the funds and direct health care providers like the nations with respect to the derivative nature of the harms alleged. *See Wash. Pub. Hosp.,* 241 F.3d at 702–03; *Allegheny,* 228 F.3d at 440–41.

We likewise hold that the harms alleged by the funds and the nations are too remote from the defendants' alleged wrongdoing to provide antitrust or RICO standing. Neither the funds nor the nations have shown that their claimed economic harms were not caused by other independent factors or that difficult problems of duplicative recoveries or allocation of damages could be avoided were they allowed to proceed. Indeed, as the defendants suggest, the alleged harm arising from payment of medical expenses by the funds and the nations is itself derivative of alleged injuries to individual smokers, and the alleged "infrastructure" harms are even more remote than the damages for medical payments because the potential for "infrastructure" harm does not exist until an actuarially significant number of medical

payments on behalf of smokers has been made. *See Laborers Local,* 191 F.3d at 239; *Oregon Laborers,* 185 F.3d at 963; *Steamfitters,* 171 F.3d at 927–28; *cf. Teamsters,* 196 F.3d at 823–24. Moreover, as the Seventh Circuit tellingly observed in *Teamsters,* insurers are hard pressed to demonstrate financial harm flowing from the tobacco industry's alleged wrongdoing because they possess information that would have indicated a need to collect higher premiums from smokers. *See Teamsters,* 196 F.3d at 823–24, 826.

The remote, derivative nature of the alleged injuries, in turn, makes more difficult the determination of the amount of damages that is attributable to the alleged wrongdoing, as distinct from other independent factors. As the circuits have pointed out, considerable speculation would be involved in identifying the costs that have caused the alleged financial instability of the funds and similar costs to the nations' treasuries that the plaintiffs contend have deterred or prevented them from financing various health care programs. *See Wash. Pub. Hosp.,* 241 F.3d at 703; *Allegheny,* 228 F.3d at 441–42; *Laborers Local,* 191 F.3d at 239–40; *Oregon Laborers,* 185 F.3d at 964–65; *Steamfitters,* 171 F.3d at 928–30. For example, it is difficult to know how smokers might have behaved with more complete information, *see Laborers Local,* 191 F.3d at 239–40; *Steamfitters,* 171 F.3d at 929, a problem compounded by the fact that the tobacco companies would be stripped of many defenses that would be available in a subrogation action. *See Teamsters,* 196 F.3d at 823. Reliance on aggregate statistical proof, as the district court in *Service Employees* accepted (without prejudice to later attack by defendants, *see* 83 F.Supp.2d at 88), and as the nations propose, compounds the difficulties and does not alter the speculative nature of the claimed damages. *See Allegheny,* 228

F.3d at 441–42; *Oregon Laborers,* 185 F.3d at 964–65; *Steamfitters,* 171 F.3d at 928–29; *cf. Teamsters,* 196 F.3d at 823. Moreover, the insurers have likely already passed the costs on to the directly injured through higher premiums. *See Teamsters,* 196 F.3d at 824.

Allowing the funds and the nations to proceed would also require complex rules for apportioning damages between potential plaintiffs removed from the alleged wrongdoing by different levels of injury, as well as create a very real possibility of duplicative recoveries against the defendants. The need for complex rules apportioning damages arises because other indirectly injured parties might also sue. As a result, courts would be required to allocate damages among various classes of directly and indirectly injured parties who are removed from the alleged torts by varying degrees and would be required to do so in a manner that protects the tobacco industry from being held repeatedly liable for the same alleged wrongdoing. *See Holmes,* 503 U.S. at 273, 112 S.Ct. 1311; *AGC,* 459 U.S. at 543–45, 103 S.Ct. 897; *Laborers Local,* 191 F.3d at 240–41; *Oregon Laborers,* 185 F.3d at 965–66; *cf. Teamsters,* 196 F.3d at 823–24. *See generally Ill. Brick,* 431 U.S. at 737–38, 97 S.Ct. 2061.

The nations contend that because they are not private insurers they cannot bring a subrogation action. Further, because they have assumed the responsibility of compensating the directly injured, they suggest that if they cannot recover in this action for the alleged harms, no one can. Assuming the premise to be correct (and the nations' submissions are far from clear on the matter), the argument mistakenly assumes that it was Congress' intent that there must be recoveries, regardless of the burdens inflicted on the legal system and the significant policies captured in the first two *Holmes* factors. *See supra* p. 1073 n.

4. It seems especially implausible that Congress would have wished to saddle the United States judicial system with such burdens simply to accommodate the legal idiosyncrasies of foreign nations. To the extent that such idiosyncrasies stand between the nations' smokers and recoveries in United States courts, the nations may wish to consider amendment of their domestic law.

Relatedly, because individual smokers may seek recoveries for the same alleged conduct under state law theories and because employers, other health insurers, and other similar potential plaintiffs might also pursue similar antitrust and RICO claims against the tobacco industry, double recovery could occur. *See Wash. Pub. Hosp.,* 241 F.3d at 703; *Teamsters,* 196 F.3d at 823; *Laborers Local,* 191 F.3d at 240–41; *Oregon Laborers,* 185 F.3d at 966; *cf. Allegheny,* 228 F.3d at 442. The district court's contrary view in *Service Employees,* 83 F.Supp.2d at 87–88, fails to take into account the collateral source rule, *see District of Columbia v. Jackson,* 451 A.2d 867, 873 (D.C.1982), and the limits of the single satisfaction rule, *see Lamphier v. Wash. Hosp. Ctr.,* 524 A.2d 729, 734 (D.C.1987), which would not prevent multiple plaintiffs from obtaining duplicative recoveries from a single defendant for a single tort. *See Guatemala,* 83 F.Supp.2d at 131 n. 3; *cf. Laborers Local,* 191 F.3d at 241.

Virtually the same kinds of problems exist with respect to the nations' claims. *See Wash. Pub. Hosp.,* 241 F.3d at 703; *cf. Allegheny,* 228 F.3d at 442; *Pfizer v. Lord,* 522 F.2d at 619–20.

By its very nature, the common law proximate cause requirement adopted by the Supreme Court in *Holmes* and *AGC* leaves open the possibility that "[s]ome injuries caused by an antitrust [or RICO] violation may thus be left unremedied for

lack of a proper plaintiff." *Oregon Laborers*, 185 F.3d at 964. *See generally Ill. Brick*, 431 U.S. at 745–47, 97 S.Ct. 2061. The third *Holmes* factor, therefore, must be considered in the context of the proximate cause analysis as a whole rather than as a free-standing, independent ground for finding proximate causation. Were satisfaction of the third *Holmes* factor necessary, the proximate cause analysis would be transformed into a process for identifying the "best" plaintiff to assert certain antitrust or RICO claims, in contravention of *AGC*, 459 U.S. at 534–35, 103 S.Ct. 897. *Cf. Oregon Laborers*, 185 F.3d at 964. Like other circuits, we conclude that individual smokers constitute a group of potential plaintiffs possessed of more direct claims who can be counted on to deter the alleged wrongdoing by asserting state law theories of recovery or perhaps even RICO and federal antitrust claims to the extent they can prove a measure of damages distinct from personal injuries. *See Wash. Pub. Hosp.*, 241 F.3d at 703; *Teamsters*, 196 F.3d at 823; *Laborers Local*, 191 F.3d at 241; *Oregon Laborers*, 185 F.3d at 964; *Steamfitters*, 171 F.3d at 933; *see also Fed. Trade Comm'n v. Ind. Fed'n of Dentists*, 476 U.S. 447, 461–62, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979).

The funds' and the nations' reliance on the purportedly foreseeable nature of their injuries and the allegedly intentional nature of defendants' wrongdoing is misplaced. "[F]oreseeability and direct injury (or remoteness) are distinct concepts, both of which must generally be established by

a plaintiff." *Laborers Local*, 191 F.3d at 236; *see also Steamfitters*, 171 F.3d at 926. Defendants suggest that substitution of the former for the latter would enable circumvention of the settled rule that one who pays the medical expenses of another may not recover those expenses in a direct suit against the tortfeasor but must proceed by way of subrogation. In any event, specific intent to harm the plaintiffs by shifting smoking-related health care costs to them is alone insufficient to overcome the bar on remote claims. *See AGC*, 459 U.S. at 537 & n. 37, 103 S.Ct. 897; *Blue Shield of Va. v. McCready*, 457 U.S. 465, 478–79, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982); *Laborers Local*, 191 F.3d at 241–42; *Steamfitters*, 171 F.3d at 925.

Accordingly, because the funds' and the nations' claims are "too remote, contingent, derivative, and indirect to survive," *Guatemala*, 83 F.Supp.2d at 130,[6] we reverse the denial of the motion to dismiss the RICO and fraud claims in *Service Employees*, and we otherwise affirm the dismissals of the complaints in *Service Employees* and *Guatemala*.

---

**6.** The failure of the funds and the nations to demonstrate proximate cause under *Holmes* with respect to their RICO and federal antitrust claims also means that their antitrust and common law claims under District of Columbia law fail for lack of proximate cause. *See McKethean v. Wash. Metro. Area Transit Auth.*, 588 A.2d 708, 716 (D.C.1991); *Lacy v. District of Columbia*, 424 A.2d 317, 321 (D.C. 1980); *see also Wash. Pub. Hosp.*, 241 F.3d at 706–07; *Allegheny*, 228 F.3d at 445–46; *Teamsters*, 196 F.3d at 827–28; *Laborers Local*, 191 F.3d at 242–43; *Oregon Laborers*, 185 F.3d at 968–69; *Steamfitters*, 171 F.3d at 934–37.