THIRD DIVISION
 
                                                    Date Filed: September 28, 2004             

No. 1-01-3316

                                     

THE COUNTY OF COOK, a Body Politic     ) Appeal from the 

and Corporate; THE PEOPLE OF THE STATE ) Circuit Court of

OF ILLINOIS 
ex
 
rel
. RICHARD A. DEVINE; ) Cook County.

and THE PEOPLE OF THE COUNTY OF COOK 
  )

ex
 
rel
. RICHARD A. DEVINE,             )                                                                  )

         Plaintiffs-Appellants and     )

         Cross-Appellees,              ) No. 97 L 04550(W)

                                       )

         v.                            )

                                       )

PHILIP MORRIS, INC.; R.J. REYNOLDS     )

TOBACCO COMPANY, BROWN AND WILLIAMSON  )

TOBACCO CO., LIGGETT & MEYERS, INC.;   )

LORILLARD TOBACCO COMPANY; INC.; UNITED)

STATES TOBACCO COMPANY, P.L.C.; BRITISH)

AMERICAN TOBACCO COMPANY, LTD.; HILL   )

AND KNOWLTON, INC.; THE COUNCIL FOR    )

TOBACCO RESEARCH-U.S.A., INC.;         )

TOBACCO INSTITUTE, INC., Foreign       )

Corporations; LEO BURNETT USA,         )

CHICAGO, a Corporation; EURO RSCG      ) Honorable 

TATHAN-CHICAGO, a Corporation;         ) James F. Henry,

ROPER STARCH WORLDWIDE, INC., a        ) Judge Presiding.

Corporation; ROPER RESEARCHERS         )

ASSOCIATES OF NEW YORK, YOUNG AND      )

RUBICAM, INC., a Corporation; and      )

MEZZINA/BROWN, INC., a Corporation,    )

                                       )

         Defendants-Appellees and      )

         Cross-Appellants              )

                                       )

(The State of Illinois,                )

                                       )

         Intervenor-Appellee).         )

     JUSTICE HALL delivered the opinion of the court:

    The plaintiffs, the County of Cook, the People of the State of Illinois 
ex
 
rel
. Richard A. Devine, and the People of the County of Cook 
ex
 
rel
. Richard A. Devine (the plaintiffs), brought suit against the defendants, Philip Morris, Inc., Liggett & Meyers, Inc., certain other named tobacco manufacturers and certain named advertising agencies (the defendants), seeking damages from the defendants for the cost of health care for tobacco consumers in Cook County.  The State of Illinois was granted leave to intervene in the suit.  The circuit court   

dismissed certain counts of the second amended complaint but denied dismissal as to the counts brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act (the Fraud Act) (815 ILCS 505/1 
et
 
seq
. (West 1996)).  However, the circuit court dismissed the second amended complaint in its entirety based upon the remoteness doctrine.

     The plaintiffs appeal the dismissal of the second amended complaint and the dismissal of certain specified counts.  The defendants cross-appeal from the denial of their motion to dismiss the consumer fraud counts.

     By way of background, on April 18, 1997, Cook County filed suit against the defendants.  On May 26, 1999, Cook County filed its second amended complaint, adding as plaintiffs the People of the State of Illinois and the People of Cook County.  The circuit court denied the defendants' motion to dismiss the counts alleging violations of the Fraud Act but granted the motion as to those counts alleging intentional and/or negligent breach of a special or general duty and a public nuisance.

     During the pendency of the above suit, the State of Illinois entered into the Master Settlement Agreement (MSA) with the tobacco industry.  See 
People v. Philip Morris, Inc.
, 198 Ill. 2d 87, 759 N.E.2d 906 (2001).  Under the MSA, the State would receive approximately $9 billion over a period of 25 years, with the potential for additional payments.  
Philip Morris, Inc
., 198 Ill. 2d at 92.  Cook County was not a participant in the settlement discussions leading up to the MSA.  Thereafter, a consent decree and final judgment was entered by the circuit court of Cook County in the State's own case against the defendants.  People of the State of Illinois v. Philip Morris, Inc., No. 96 L 13146.

     Based upon the MSA, the defendants filed motions for summary judgment, arguing that the MSA barred the plaintiffs' suit and that the consent decree constituted 
res
 
judicata
 as to the issues raised in the plaintiffs' second amended complaint.  The State was granted leave to intervene in the suit.  The circuit court denied the motions for summary judgment but granted the defendants' motion to dismiss the People of the State of Illinois and the People of Cook County as parties to the suit.

     The defendants filed a motion for judgment on the pleadings,  
inter
 
alia
, on the remoteness doctrine.  The defendants also filed another motion to dismiss the Fraud Act counts.

     The circuit court denied the defendants' motion to dismiss the Fraud Act counts but granted them judgment on the pleadings, based upon the remoteness doctrine, and dismissed the second amended complaint in its entirety.  

     This appeal and cross-appeal followed.

ANALYSIS

I. Jurisdiction

     Initially, we address the issue of this court's jurisdiction to consider this appeal.  Even though neither party raises the issue, a reviewing court has a duty to consider 
sua
 
sponte
 its jurisdiction.  
Cashmore v. Builders Square, Inc.
, 207 Ill. App. 3d 267, 269, 565 N.E.2d 703 (1990).

     At oral argument, we ordered the parties to address the issue of this court's jurisdiction in light of our recent decision in
  
Dewan v. Ford Motor Co.
, 343 Ill. App. 3d 1062, 799 N.E.2d 391 (2003).  In response to this court's order
, the parties submitted a joint memorandum addressing the issue of jurisdiction.  The parties maintained that no fee petition was filed in this case and that the claim for attorney fees was related to another case involving some of the same parties.

     The parties' memorandum does not specifically address our decision in 
Dewan
.   Nonetheless, we agree that since no petition for an award of fees was filed in this case, either before or after the circuit court's dismissal of the plaintiffs' complaint, the circuit court's judgment did not resolve fewer than all the claims, thus distinguishing the present case from 
Dewan
.  We now turn to the merits of the appeal and cross-appeal in this case.

II. Judgment on the Pleadings

     The plaintiffs contend that the circuit court erred in dismissing their second amended complaint in its entirety based on the remoteness doctrine.

A. Standard of Review

     This court reviews the granting of judgment on the pleadings 
de
 
novo
.  
People ex rel. Ryan v. Village of Hanover Park
, 311 Ill. App. 3d 515, 724 N.E.2d 132 (1999).  

     "'Judgment on the pleadings is proper only if questions of law, and not of fact, exist after the pleadings have been filed.' [Citation.]"  
Chicago Title & Trust Co. v. Steinitz
, 288 Ill. App. 3d 926, 934, 681 N.E.2d 669 (1997).  If no issue of material fact is presented by the pleadings, "'the question is which party is entitled to judgment.' [Citation.]"  
Steinitz
, 288 Ill. App. 3d at 934.

B. Discussion

     The factual allegations of the plaintiffs' second amended complaint may be summarized as follows.  The defendants conspired to suppress information about the adverse and addictive qualities of nicotine, to create doubt about the publicly available adverse scientific studies, to conceal the defendants' manipulation of the level of nicotine in tobacco products, and to avoid competition, which may have made safer cigarettes available.  A direct result of the defendants' actions was to forestall governmental regulation by Cook County and to contribute to Cook County's overall increased healthcare costs.  The defendants' wrongful activities were designed to influence Cook County's conduct, and had the defendants' acts not been concealed, Cook County would have taken action to restrain those activities, which would have improved the health and lives of the residents of Cook County and directly reduced Cook County's costs.  

     Proof of a causal relationship between a defendant's action and a plaintiff's injury is essential in every tort "[b]ecause the consequences of an act go endlessly forward in time and its causes stretch back to the dawn of human history."  
Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.
, 191 F.3d 229, 235 (2d Cir. 1999).  Thus, the concept of proximate cause was developed to limit the liability of a wrongdoer to only those harms with a reasonable connection to the wrongdoer's actions.  
Laborers Local 17 Health & Benefit Fund
, 191 F.3d at 235.

     One way in which the concept of proximate cause operates is through the remoteness doctrine, which is sometimes called the "direct-injury" test.  
Holmes v. Securities Investor Protection Corp.
, 503 U.S. 258, 268-69, 117 L. Ed. 2d 532, 544, 112 S. Ct. 1311, 1318 (1992).  This doctrine states that there must be "some direct relation between the injury asserted and the injurious conduct alleged."  
Holmes
, 503 U.S. at 268, 117 L. Ed. 2d at 544, 112 S. Ct. at 1318.

     We begin by noting that eight circuit courts of appeal have rejected claims similar to those raised in the present case, concluding that the alleged injuries are too remote and, therefore, are not redressable for lack of probable cause.  See 
Service Employees International Union Health & Welfare Fund v. Philip Morris, Inc.
, 249 F.3d 1068, 1071 (D.C. Cir. 2001).  See also 
Lyons v. Philip Morris, Inc.
, 225 F.3d 909 (8th Cir. 2000); 
United Food & Commercial Workers Unions, Employers Health & Welfare Fund v. Philip Morris, Inc.
, 223 F.3d 1271 (11th Cir. 2000); 
Texas Carpenters Health Benefit Fund v. Philip Morris, Inc.
, 199 F.3d 788 (5th Cir. 2000); 
International Brotherhood of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris, Inc.
, 196 F.3d 818 (7th Cir. 1999); 
Laborers Local 17 Health and Benefit Fund.
, 191 F.3d 229; 
Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.
, 185 F.3d 957 (9th Cir. 1999); 
Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.
, 171 F.3d 912 (3rd Cir. 1999).  

     The plaintiffs contend that they have standing under both the Fraud Act (815 ILCS 505/7, 11a (West 1996)) and the Illinois Antitrust Act (Antitrust Act) (740 ILCS 10/7(2) (West 1996)). Therefore, the remoteness analysis does not apply to them.  

     In 
Shannon v. Boise Cascade
, 328 Ill. App. 3d 621, 766 N.E.2d 1136 (2002), relied on by the plaintiffs, the plaintiffs were purchasers of homes with defective siding.  The reviewing court rejected the trial court's determination that, as a matter of law, the causation was too remote and, therefore, there was no proximate cause.  The court determined that the plaintiffs did not need to have heard about the defendant's advertising or have relied on the defendant's further representations to state a claim for consumer fraud.  The court further held that proximate cause was not destroyed because the defendant was separated from some of the plaintiffs by the builder-seller or intervening purchasers.  
Shannon
, 328 Ill. App. 3d at 628.  

     Recently, our supreme court reversed the appellate court decision in 
Shannon
.  See 
Shannon v. Boise Cascade Corp.
, 208 Ill. 2d 517, 805 N.E.2d 213 (2004).  The court noted its prior holding that deceptive advertising cannot be the proximate cause of damages under the Fraud Act unless it actually deceives the plaintiff.  See 
Oliveira v. Amoco Oil Co.
, 201 Ill. 2d 134, 776 N.E.2d 151 (2002).  Therefore, since the plaintiffs failed to allege that any defective advertising was received by any plaintiff or by a builder, architect, engineer or like person connected with a plaintiff, the advertising did not deceive the plaintiffs and could not have proximately caused the claimed damages.  
Shannon
, 208 Ill. 2d at 524-25.
(footnote: 1)
     The plaintiffs also rely on 
State ex rel. Humphrey v. Philip Morris, Inc.
, 551 N.W.2d 490 (Minn. 1996).  In that case, the Minnesota Supreme Court held that private payors could maintain actions under the State's consumer fraud and antitrust statutes.  The court agreed that the statutes permitted causes of action for any party injured directly or indirectly by a violation of the statute.  
State ex rel. Humphrey
, 551 N.W.2d at 495-97.  

     The plaintiffs maintain that antitrust statutes do not confine their protection to consumers or to purchasers but protect all who are made victims of practices forbidden by the statutes.   
Blue Shield of Virginia v. McCready
, 457 U.S. 465, 73 L. Ed. 2d 149, 102 S. Ct. 2540 (1982); see 
Group Health Plan, Inc. v. Philip Morris, Inc.
, 621 N.W.2d 2, 5 (Minn. 2001) ("any person" is not limited to purchasers for purposes of stating a cause of action under Minnesota's misrepresentation in sales statute, citing 
McCready
).

     In 
International Brotherhood of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris Inc.
 (
Teamsters
), the Seventh Circuit Court of Appeals rejected attempts by the plaintiffs, insurers and benefit funds, to bring direct actions against the tobacco manufacturers.  Noting its agreement with other appellate decisions rejecting similar claims, the court began its analysis as follows:

     "For more than 100 years state and federal courts have adhered to the principle (under both state and federal law) that the victim of a tort is the proper plaintiff, and that insurers or other third-party providers of assistance and medical care to the victim may recover only to the extent their contracts subrogate them to the victim's rights. [Citations.]"  
Teamsters
, 196 F.3d at 822.

The court found that the risk of multiple recovery, since smokers could file their own antitrust actions, together with the difficulty in determining damages and the lack of an antitrust injury, prevented the plaintiffs from recovering.  
Teamsters
, 196 F.3d at 823-25.
(footnote: 2)
     Turning to the state law claims, the court noted that the benefit funds relied on Illinois law.
(footnote: 3)  Apart from finding no reason for applying Minnesota law to the case before it, the court observed that Minnesota was "an outlier with respect to suits by remotely affected persons."   
Teamsters
, 196 F.3d at 827.  The court then noted that 47 states, including Illinois, enforce the normal rule that a third-party payor may recover as a subrogee or not at all.  
Teamsters
, 196 F.3d at 827-28.

     Although in 
Illinois Brick Co. v. Illinois
, 431 U.S. 720, 52 L. Ed. 2d 707, 97 S. Ct. 2061 (1977), the Supreme Court held that only the immediate purchaser of goods may sue under antitrust laws, Illinois now provides by statute that indirect purchasers may recover as well.  See 740 ILCS 10/7(2) (1996).  However, there is a distinction between the "direct-purchasers" doctrine and "direct-injury" doctrine.  
Teamsters
, 196 F.3d at 828.  

     In 
Associated General Contractors of California, Inc. v. California State Council of Carpenters
, 459 U.S. 519, 74 L. Ed. 2d 723, 103 S. Ct. 897 (1983), the Supreme Court upheld the dismissal of the union's antitrust complaint, even though the complaint alleged a causal connection between an antitrust violation and harm to the union and that the defendants intended to cause that harm.  In its analysis of proximate cause, the Court stated as follows:

     "An additional factor is the directness or indirectness of the asserted injury.  In this case, the chain of causation between the Union's injury and the alleged restraint in the market for construction subcontracts
 contains several somewhat vaguely defined links.  According to the complaint, defendants applied coercion against certain landowners and other contracting parties in order to cause them to divert business from certain union contractors to nonunion contractors.  As a result, the Union's complaint alleges, the Union suffered unspecified injuries in its 'business activities.'  It is obvious that any such injuries were only an indirect result of whatever harm may have been suffered by 'certain' construction contractors and subcontractors."   
Associated General Contractors
, 459 U.S. at 540-41, 74 L. Ed. 2d at 739-40, 103 S. Ct. at 909-10.

     The plaintiffs point out that this court has rejected the remoteness argument in 
City of Chicago v. Beretta U.S.A. Corp.
, 337 Ill. App. 3d 1, 785 N.E.2d 16 (2002), 
appeal
 
granted
, 203 Ill. 2d 544, 788 N.E.2d 727 (2003).  In that case, the City of Chicago sued gun manufacturers, alleging that their practices unreasonably facilitated the unlawful possession of handguns in Chicago and created a public nuisance.  In rejecting the defendants' remoteness argument, the court held that "[a] reasonable trier of fact could find that the criminal misuse of guns to kill persons were occurrences that defendants knew would result or were substantially certain to result" from the defendants' alleged conduct.  
Beretta U.S.A. Corp.
, 337 Ill. App. 3d at 18.  However, the remoteness doctrine can apply even if the injury was foreseeable.  See 
Kraft Chemical Co. v. Illinois Bell Telephone Co.
, 240 Ill. App. 3d 192, 196-97, 608 N.E.2d 243 (1992).

     The plaintiffs also rely on 
Young v. Bryco Arms
, 327 Ill. App. 3d 948, 765 N.E.2d 1 (2001), 
appeal
 
granted
, 201 Ill. 2d 619, 786 N.E.2d 202 (2002).  In that case, this court found that the plaintiffs, relatives of victims of shootings, had stated causes of action for public nuisance.  However, the plaintiffs sued on behalf of the shooting victims and, therefore, unlike the present case, did not present an issue of derivative injury.  

     Next, the plaintiffs argue that their governmental roles support a causal relationship between their alleged damages and the conduct of the defendants.  They argue that the special relationship exception to the remoteness doctrine applies, especially in light of Cook County's home rule status.  See 
City of Boston v. Smith & Wesson Corp.
, No. 199902590 (Mass. Sup. Ct. July 13, 2000) (in Massachusetts an exception to the remoteness doctrine may exist if a special relationship exists between a government body and an injured third person).

      However, other cases have recognized that, even if a state has special rights of action, a political subdivision thereof is still subject to the proximate cause requirement.  See 
Association of Washington Public Hospital Districts v. Philip Morris, Inc.
, 241 F.3d 696, 703 n.3 (9th Cir. 2001).  While under its home rule powers, Cook County has enacted legislation in the area of smoking regulations, the instant case was brought pursuant to State law.

     Finally, the plaintiffs argue that proximate cause is a question of fact for the jury and, therefore, the circuit court erred in granting judgment on the pleadings.  See 
Lee v. Chicago Transit Authority
, 152 Ill. 2d 432, 605 N.E.2d 493 (1992).

The plaintiffs maintain their allegations that the defendants conspired to prevent Cook County from taking regulatory action on tobacco products resulted in an injury that was "natural and probable," and that Cook County was a "highly foreseeable plaintiff."  

     The plaintiffs' continued reliance on 
Shannon
 
is misplaced.  Even if it could be said that the plaintiffs were deceived by the defendants' campaign to suppress the dangers of smoking, they still were not purchasers of tobacco products.  Moreover, the supreme court's analysis did not include the remoteness doctrine. The plaintiffs'
 reliance on 
Arangold Corp. v. Zehnder
, 329 Ill. App. 3d 781, 768 N.E.2d 391 (2002), 
aff'd
, 204 Ill. 2d 142, 787 N.E.2d 786 (2003), is equally misplaced.  The court recognized that the taxation of tobacco products was rationally related to the State's interest in preserving the health of its citizens, noting that the legislature's judgment in crafting a statute is "'not subject to courtroom fact finding and may be based on rational speculation unsupported by evidence or empirical data.' [Citations.]"  
Arangold Corp.
, 329 Ill. App. 3d at 793.  This court is not similarly free to speculate as to whether the plaintiffs' interest in the health of Cook County residents is sufficiently connected to the injuries suffered by residents who have purchased tobacco products  to allow them to pursue the complaint in this case.

     Moreover, similar arguments have previously been rejected.  In 
Service Employees International
, the court stated as follows:

     "The remote, derivative nature of the alleged injuries, in turn, makes more difficult the determination of the amount of damages that is attributable to the alleged wrongdoing, as distinct from other independent factors.  As the circuits have pointed out, considerable speculation would be involved in identifying the costs that have caused the alleged financial instability of the funds and similar costs to the nations' treasuries that the plaintiffs contend have deterred or prevented them from financing various health care programs. [Citations.]  For example, it is difficult to know how smokers might have behaved with more complete information, [citation], a problem compounded by the fact that the tobacco companies would be stripped of many defenses that would be available in a subrogation action. [Citations.]  Reliance on aggregate statistical proof *** compounds the difficulties and does not alter the speculative nature of the claimed damages. [Citations.]  Moreover, the insurers have likely already passed the costs on to the directly injured through higher premiums."  
Service Employees International
, 249 F.3d 1074-75.

The court also pointed out that because smokers, employers, health insurers and other potential plaintiffs might seek  recovery for the same alleged conduct on various state and federal grounds, double recovery could occur.  
Service Employees International
, 249 F.3d at 1075.  See also 
Associated General Contractors
, 459 U.S. at 545, 74 L. Ed. 2d at 742-43, 103 S. Ct. at 912.

     The plaintiffs point out that the circuit court refused to dismiss the State's suit, rejecting the remoteness argument.  However, there the circuit court's proximate cause analysis dealt only with the allegations that the defendants foresaw and intended that the State would spend hundreds of millions of dollars.  However, foreseeability and direct injury (or remoteness) are distinct concepts, both of which must generally be established by the plaintiff.  
Service Employees International
, 249 F.3d at 1076.  As the court in that case held:

"In any event, specific intent to harm the plaintiffs by shifting smoking-related health care costs to them is alone insufficient to overcome the bar on remote claims."  
Service Employees International
, 249 F.3d at 1076.

But see 
Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.
 36 F. Supp. 2d 560 (E.D. N.Y. 1999) (intentional conduct expands proximate cause); 
City & County of San Francisco v. Philip Morris, Inc.
, 957 F. Supp. 1130 (N.D. Cal. 1997) (broader definition of cause in intentional torts).

     As the plaintiffs point out, other courts have rejected the remoteness doctrine in suits against the tobacco companies, finding that the plaintiffs suffered a direct injury. See 
City & County of San Francisco v. Philip Morris, Inc.
, No. C 96-2090 (March 3, 1998); see also  
Blue Cross & Blue Shield of New Jersey, Inc.
, 36 F. Supp. 2d 560 (rejecting remoteness doctrine where plaintiffs alleged injuries stemming from their own reliance on defendants' misrepresentations).  The plaintiffs also rely on a trial court opinion from the 22nd Judicial Circuit of Missouri.  City of St. Louis v. American Tobacco Co., No. 982-09652 (November 7, 2001).  The court there refused to follow 
Teamsters
, on the basis that 
Teamsters
 involved third-party payors and the court of appeals did not review Missouri law in its analysis.  Instead, the Missouri court found that there was a question of fact as to whether the defendants were the proximate cause of the plaintiffs' injuries.

     We conclude the remoteness doctrine applies to the plaintiffs' second amended complaint.  The remaining question is, have the plaintiffs set forth a direct relationship between the injury asserted and the injurious conduct in this case  sufficient to withstand a motion for judgment on the pleadings?  

     The plaintiffs claim that they were injured by the defendants' conspiracy to cover up the effects of smoking in order to sell more cigarettes to people who smoke, resulting in additional health costs to the plaintiffs, who provided the medical care necessary to treat the people who smoked.  The defendants are not accused of selling tobacco products to the plaintiffs, but to the people who consumed tobacco products.  Any injury to the plaintiffs results only indirectly: if a tobacco consumer needs treatment and if he or she seeks treatment from the plaintiffs.  The fact that the tobacco consumers have filed their own suits against defendants, such as the ones in this case, illustrates the indirectness of the injury suffered by the plaintiffs in this case.  The plaintiffs' position is virtually identical to that of an insurance company seeking to recoup its medical payments to its insured from the party at fault.  The insurance company must proceed via a subrogation action or not at all, as must these plaintiffs.  See 
Teamsters
, 196 F.3d at 827-28.  

     Notwithstanding the contrary authority, based upon the weight of authority and our own analysis, we are convinced that, given the derivative nature of the injuries alleged in the plaintiffs' second amended complaint, it was correctly dismissed on the basis of the remoteness doctrine.  We are not convinced that the plaintiffs have a direct injury.
     

     Deciding this case as we do, we need not address the remaining issues raised by the plaintiff, the intervenor or the defendants in their cross-appeal.

     The judgment of the circuit court is affirmed.

     Affirmed.

     HOFFMAN, P.J., and SOUTH, J., concur.

     

     

     

     

FOOTNOTES
1:
In 
dicta
, the court suggested that if the plaintiffs had been "indirectly" deceived because the builder or architect had been deceived, proximate cause requirement under the Fraud Act could be satisfied.  See 
Shannon
, 208 Ill. 2d at 525-26; but see 
Shannon
, 208 Ill. 2d at 529-32 (Thomas, J., specially concurring).

2:
"To recover under the antitrust laws, the plaintiff must show that its injury flows from that which makes the conduct an antitrust problem: higher prices and lower output.  But [the plaintiffs] do not say that the output of cigarettes is too low as a result of a conspiracy; they say that it is too high!"  
Teamsters
, 196 F.3d at 825.

3:
In the district court case, the benefit fund plaintiffs raised claims under the Fraud Act and the Antitrust Act.  
International Brotherhood of Teamsters Local 734 Health & Welfare Trust Fund v. Philip Morris, Inc.
, 34 F. Supp. 2d 656 (N.D. Ill. 1998).  The district court dismissed the Fraud Act claims for lack of standing and for failure to state a cause of action.  
International Brotherhood of Teamsters
, 34 F. Supp. 2d at 661-62, 664.