**The STATE OF SÃO PAULO OF the FEDERATIVE REPUBLIC OF BRAZIL, Plaintiff Below, Appellant,**

v.

**The AMERICAN TOBACCO COMPANY, et al., Defendants Below, Appellees.**

**Republic of Panama, Plaintiff Below, Appellant,**

v.

**The American Tobacco Company, et al., Defendants Below, Appellees.**

**Nos. 383/384, 2006.**

Supreme Court of Delaware.

Submitted: Dec. 6, 2006.
Decided: Feb. 23, 2007.

Randall E. Robbins and Richard D. Heins, of Ashby & Geddes, Wilmington, DE; Michael X. St. Martin and Conrad S.P. Williams, III, of St. Martin & Williams, Houma, LA; George J. Fowler, III and Jon W. Wise (argued), of Fowler Rodriguez & Chalos, New Orleans, LA; and Calvin C. Fayard, Jr., of Fayard and Honeycutt, Denham Springs, LA, of counsel, for Appellants.

Donald E. Reid and A. Gilchrist Sparks, III, and R. Judson Scaggs, Jr., of Morris, Nichols, Arsht and Tunnell, LLP, Wilmington, DE; Kenneth J. Parsigian (argued) and David R. Zipps, of Goodwin Procter, LLP, Boston, MA, of counsel, for Appellees Philip Morris USA Inc. (f/k/a Philip Morris Companies Inc.) and Altria Group, Inc.

Bonnie Glantz Fatell of Blank Rome, LLP, Wilmington, DE; Robert F. McDermott, Jr. and Paul S. Ryerson, of Jones Day, Washington, DC, of counsel, for Appellees R.J. Reynolds Tobacco Company, R.J. Reynolds Tobacco Holdings, Inc. (f/k/a RJR Nabisco, Inc.), Brown & Williamson Tobacco Corporation (individually and as successor by merger to The American Tobacco Company); BATUS Retail Services, Inc. (individually and as successor by merger to BATUS, Inc.), BATUS Holdings, Inc., and Fortune Brands, Inc. (f/k/a American Brands, Inc.) and Reynolds American, Inc.

Stephen L. Caponi, of Blank Rome, LLP, Wilmington, DE; Thomas P. Anzelmo of McCranie, Sistrunk, Anzelmo, Metairie, LA, of counsel, for Appellees Quaglino Tobacco and Candy Co., Inc. and J & R Vending Services, Inc.

Paul J. Lockwood of Skadden Arps Slate Meagaher & Flom, LLP, Wilmington, DE, for Appellees U.S. Smokeless Tobacco Co. (f/k/a United States Tobacco Co.) and UST, Inc.

Before BERGER, JACOBS and RIDGELY, Justices.

JACOBS, Justice:

The Republic of Panama and The State of São Paulo, Brazil (the "Foreign Governments") brought actions in the Superior Court against various manufacturers and distributors of tobacco products (the "Tobacco Company Defendants"). Certain Tobacco Company defendants moved to dismiss the complaints under Superior Court Civil Rule 12(b)(6) for failure to state a claim upon which relief could be granted.[1] In a well-written opinion and order dated July 13, 2006, the Superior Court granted the motion and dismissed the complaints as to all Tobacco Company Defendants.[2] The Foreign Governments appealed from that order. Because the Superior Court committed no legal error, we affirm its judgment of dismissal, al-

---

1. The moving Tobacco Company Defendants were Philip Morris USA, Inc.; R.J. Reynolds Tobacco Company, R.J. Reynolds Tobacco Holdings, Inc. (f/k/a RJR Nabisco, Inc.); Brown & Williamson Tobacco Corp. (individually and as successor by merger to the American Tobacco Company); BATUS Retail Services, Inc. (individually and as successor by merger to BATUS, Inc.); BATUS Holdings, Inc.; Fortune Brands, Inc. (f/k/a American Brands, Inc.); U.S. Smokeless Tobacco Co (f/k/a United States Tobacco Co.); UST, Inc.; Liggett Group, Inc.; and Liggett & Myers, Inc. The non-moving Tobacco Company defendants were B.A.T. Indus.; Tobacco Institute, Inc.; Quaglino Tobacco and Candy Co., Inc.; and J & R Vending Services, Inc.

2. *Republic of Panama v. The Am. Tobacco Co.*, Nos. 05C–07–180 & 181, 2006 WL 1933740 (Del.Super. Ct., June 23, 2006, *modified on*, July 13, 2006) (the "Superior Court Opinion").

though on a basis different from that articulated by the Superior Court.

### The Foreign Governments' Complaints And The Grounds For Their Dismissal

In their complaints, the Foreign Governments seek to recover medical expenses they claim to have incurred for decades in treating the health problems resulting from their citizens' consumption of the Tobacco Company Defendants' tobacco products. Specifically, the Foreign Governments claim that their citizens were misled about the health risks of smoking and as a result, began to smoke (or to smoke more), and became ill. As a consequence, the Foreign Governments' citizens incurred medical expenses that the Foreign Governments became legally obligated to, and did, pay. The Foreign Governments claim that they also were misled about the health risks of smoking, which caused them to refrain from taking more effective prevention measures that would have reduced smoking, smoking-related diseases, and the resulting medical expenses. The complaints do not identify any individual smokers whose smoking-related expenses the Foreign Governments were required to pay, nor do they identify the persons (whether smokers or government officials) who allegedly were misled.

The Republic of Panama complaint alleged that the Tobacco Company Defendants were liable on theories of negligence, strict liability in tort, and unjust enrichment under Panamanian civil law. The complaint of the State of São Paulo, Brazil alleged that those defendants were liable for negligence, breach of public health obligations, strict liability in tort, and unjust enrichment under Brazilian civil law. In addition, both Foreign Governments asserted claims of breach of voluntary undertaking, unjust enrichment, fraud, and civil conspiracy under Delaware law.

The Foreign Governments brought these Superior Court actions in their own right, rather than seeking to stand in the shoes of their citizens by way of subrogation. Thus, the Foreign Government complaints do not seek damages for the smoking-related personal injuries suffered by their citizens. Rather, they purport to seek damages for what they describe as "separate injuries to [the Foreign Governments'] property and national patrimony that is wholly distinct from the harm[ ] suffered by individuals." [3]

As previously noted, certain Tobacco Company Defendants moved to dismiss the complaints for failure to state a legally cognizable claim for relief. The Superior Court granted the motion, holding that the Foreign Governments' claims failed because the complaints did not establish proximate cause as a matter of law:

> Acting as a healthcare provider, the Foreign Governments cannot establish proximate causation of their injury, because their injury is only related to Moving Defendants via the actions or inactions of their citizens. Standing between Moving Defendants' alleged tortuous [sic] conduct and the Foreign Governments' injury are their citizen smokers. The smokers break the chain of causation and disrupt the "natural and continuous sequence" between the act and the injury.

The trial court further held that the Foreign Governments lacked standing to seek a recovery on behalf of their citizens as *parens patriae*.[4] Under the *parens patriae* doctrine, U.S. States have standing in

---

**3.** Superior Court Opinion, 2006 WL 1933740 at *1.

**4.** Although only some of the Tobacco Company Defendants moved to dismiss, the Superior Court dismissed the Foreign Governments' claims as to all Defendants.

the federal courts to assert claims on behalf of their citizens.[5] Relying upon federal court precedent, the Superior Court held that *"parens patriae* standing should not be recognized in a foreign nation (by contrast with a state in this country) unless there is a clear indication by the [United States] Supreme Court or one of the two coordinate branches of government to grant such standing."[6] The Foreign Governments, the trial court noted, did not cite any " 'indication' from any one of the three co-equal branches of government that *parens patriae* should be recognized in tobacco cases brought by foreign nations . . . ."[7]

The Foreign Governments filed a timely appeal from the Superior Court order of dismissal.

### The Foreign Governments' Claims of Error and The Issues Presented on Appeal

On appeal, the Foreign Governments claim that the Superior Court erred as a matter of law by holding that they had failed to allege proximate cause and to establish their standing to sue as *parens patriae.* More specifically, the Foreign Governments contend that the trial court applied an incorrect proximate cause analysis because it: (i) treated the Foreign Governments solely as healthcare providers without considering their role as sovereigns; (ii) ignored the principle that an act or omission is a proximate cause of the plaintiff's injury or damages if the injury or damages were a reasonably foreseeable

consequence of the act or omission, as was the case here; and (iii) overlooked the fact that proximate cause is a doctrine of public policy, not an inflexible rule. According to the Foreign Governments, the correct analysis that the Superior Court failed to employ is to inquire whether "justice demands, and will permit, the Superior Court to fashion a remedy to compensate the [Foreign Governments] for the harm they suffered as a result of the [Tobacco Company Defendants'] wrongdoing here."[8] Under that analysis, the Foreign Governments contend, this Court should hold that the pleaded facts establish proximate cause, given "the intent of the wrongdoers, the undisputed nature of the damage, and the age old equitable principle that no wrong will be suffered without a remedy[.]"[9]

The Foreign Governments further claim that the Superior Court erroneously denied them *parens patriae* standing. Specifically, they argue that there is no logical basis to accord *parens patriae* standing to States, yet not to foreign governments. Therefore, the cases that distinguish between States and foreign governments were wrongly decided, and the Superior Court erred in relying on them. Second, the Foreign Governments point to federal court decisions allowing foreign sovereigns to claim *parens patriae* standing to the same extent as an American State, in cases where the foreign sovereign can articulate an interest apart from the interests of a specific private individual.[10] Arguing that their complaints adequately allege govern-

---

**5.** *See Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. 592, 601, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982).

**6.** Superior Court Opinion, 2006 WL 1933740 at *8 (quoting *Serv. Employees Int'l Health & Welfare Fund v. Philip Morris, Inc.,* 249 F.3d 1068, 1073 (D.C.Cir.2001)).

**7.** Superior Court Opinion, 2006 WL 1933740 at *8.

**8.** Appellants' Opening Br., at 15

**9.** *Id.*

**10.** *Coordination Council for N. Am. Affairs v. Nw. Airlines,* 891 F.Supp. 4, 7 (D.D.C.1995); *In re Edmond,* 934 F.2d 1304, 1308 (4th Cir. 1991); and *Texas v. Am. Tobacco Co.,* 14 F.Supp.2d 956 (E.D.Tex.1997).

ment healthcare and financial interests separate and apart from the interests of their private citizens, the Foreign Governments urge that by ignoring those decisions, the Superior Court improperly denied them *parens patriae* standing on this basis as well.

■ The Foreign Government's claims raise two issues on this appeal. The first is whether the Superior Court erred in holding that the Foreign Governments' complaints failed to state a claim upon which relief can be granted. The second is whether the Superior Court erroneously concluded that the Foreign Governments lacked standing to assert their claims as *parens patriae*. On review of a dismissal of a complaint under Rule 12(b)(6), the inquiry is whether it appears with reasonable certainty that the plaintiff cannot prevail on any set of facts that may be inferred from the complaint's well-pleaded allegations.[11] All parties agree that the two issues presented here raise questions of law that this Court reviews *de novo*.[12]

To promote clarity, we address these issues in reverse order.

### The Denial of Parens Patriae Standing

■ As earlier stated, the Foreign Governments claim that the Superior Court erroneously concluded that they lacked standing to assert their claims as *parens patriae* because: (1) there is no logical basis to distinguish between American States (which are allowed *parens patriae* standing) and foreign governments (which are not), and (2) the Superior Court did not consider decisions by other courts that

permit foreign sovereigns to claim *parens patriae* standing to the same extent as a State. Neither contention, in our view, has merit.

■ As the Superior Court properly recognized, *parens patriae* standing is reserved for U.S. States which, in certain limited circumstances are permitted by the federal courts to assert claims on behalf of their citizens.[13] But, as the Court of Appeals for the District of Columbia Circuit recognized in *Service Employees International Union Health and Welfare Fund v. Philip Morris, Inc.*,[14] foreign sovereigns will not be accorded *parens patriae* standing except in very limited circumstances that are not present here:

> The nations' assertion that they may proceed in *parens patriae* is a dubious assertion at best, for as the First Circuit pointed out in *Estados Unidos Mexicanos v. DeCoster*, 229 F.3d 332, 336 (1st Cir.2000), *parens patriae* standing should not be recognized in a foreign nation (by contrast with a State in this country) unless there is a clear indication by the Supreme Court or one of the two coordinate branches of government to grant such standing. The nations offer no evidence of such intent. Rather, the doctrine of *parens patriae* is merely a species of prudential standing ... and does not create a boundless opportunity for governments to seek recovery for alleged wrongs against them or their residents. *See, e.g., Pfizer, Inc. v. Lord*, 522 F.2d 612, 616 (8th Cir. 1975).[15]

The Foreign Governments argue that because no logical basis exists to distin-

**11.** *See Malpiede v. Townson*, 780 A.2d 1075, 1082–83 (Del.2001).

**12.** *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 438 (Del.2005); *Plummer v. Sherman*, 861 A.2d 1238, 1242 (Del.2004).

**13.** *See Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982).

**14.** 249 F.3d 1068 (D.C.Cir.2001), *cert. denied sub nom.*, 534 U.S. 994, 122 S.Ct. 463, 151 L.Ed.2d 380 (2001).

**15.** 249 F.3d at 1073.

guish between American States and foreign governments for *parens patriae* purposes, *DeCoster* and *Service Employees* were wrongly decided. That argument is misconceived, because there is a logical basis, which the First Circuit in *DeCoster* fully explained.

In *DeCoster*, the Court upheld the dismissal of a claim by the Mexican government to enjoin employment discrimination against its nationals.[16] Mexico argued that it should have the same standing that the U.S. Supreme Court accorded to Puerto Rico in *Alfred L. Snapp & Son v. Puerto Rico*.[17] The *DeCoster* court found *Snapp* inapplicable, however, because Puerto Rico, like the fifty American States, had given up certain sovereign rights to become part of the United States.[18] Foreign governments (such as Panama and São Paulo here), on the other hand, retained the full array of sovereign rights that the American States and Puerto Rico had ceded to the United States government. For example, foreign governments may pursue diplomatic avenues of redress, such as entering into a treaty, whereas States cannot. If it were thought desirable to treat foreign governments for standing purposes equally to American States, such remedies are "committed to the Executive and to the Congress."[19] As the First Circuit put it, courts should not "impinge on the Executive's treaty-making prerogatives or ... assume that courts have the institutional competence to perform functions assigned elsewhere by the Constitution."[20]

Nor is there merit to the Foreign Governments' second argument—that the Superior Court improperly disregarded holdings by "other courts" that foreign sovereigns "may claim *parens patriae* standing to the same extent as a state."[21] In support of that position the Foreign Governments cite only two cases. One of them, *Texas v. American Tobacco Co.*,[22] is totally off-point, because the court there held that the State of Texas—not foreign governments—can assert "quasi sovereign" interests in United States courts. The Foreign Governments also rely upon a footnote in a case decided by the United States District Court for the District of Columbia, *Coordination Council for North American Affairs v. Northwest Airlines, Inc.*[23] To the extent that decision can be said to support the Foreign Government's position, it was overruled in 2001 by the D.C. Circuit in *Service Employees*.

We conclude, for these reasons, that the Superior Court correctly held that the Foreign Governments lack standing to sue as *parens patriae*. We further note that the *parens patriae* issue, however decided, is immaterial to the outcome of this appeal. Even if the Foreign Governments were found to have *parens patriae* standing, they would still be required (as the Superior Court in this case, and the D.C. Circuit in *Service Employees* recognized) to "assert all the elements of a prima facie tort case in the same manner as the citizens on whose behalf they are acting."[24] Accord-

16. *Estados Unidos Mexicanos v. DeCoster*, 229 F.3d 332 (1st Cir.2000).

17. *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 601, 102 S.Ct. 3260.

18. *DeCoster*, 229 F.3d at 337–38.

19. *Id.* at 340.

20. *Id.*

21. Appellants' Op. Br., at 15–16.

22. 14 F.Supp.2d 956 (E.D.Tex.1997).

23. 891 F.Supp. 4, 7 n. 3 (D.D.C.1995).

24. Superior Court Opinion 2006 WL 1933740 at *8; *Serv. Employees Int'l Union Health & Welfare Fund*, 249 F.3d at 1073 (stating that the foreign governments "fail to show that [*parens patriae*] status eliminates or adequately substitutes for proximate cause").

ingly, the issue of determinative import, to which we next turn, is whether the Foreign Governments have stated a claim upon which relief can be granted.

### Dismissal For Failure To State Cognizable Claims For Relief

 Before addressing the legal sufficiency of the Foreign Governments' claims, it helps to put those claims into perspective. Although the Foreign Governments characterize themselves as "quasi sovereigns," the specific capacity in which they are suing is functionally indistinguishable from that of an insurer or third party provider of medical care. In that capacity the Foreign Governments could have chosen to stand in the shoes of their injured citizens and bring these actions to enforce their rights as subrogees. Indeed, in some jurisdictions, the Foreign Governments would have been required to do so. Many state and federal courts have "adhered to the principle (under both state and federal law) that the victim of a tort is the proper plaintiff, and that insurers or other third-party providers of assistance and medical care to the victim may recover only to the extent their contracts subrogate them to the victim's rights." [25] Had the Foreign Governments followed that procedural path, their complaints would have survived this Rule 12(b)(6) dismissal motion. Yet because they did not, it is not untoward of us to ask why. For an answer, we cannot improve upon Circuit Judge Easterbrook's explanation in *International Brotherhood of Teamsters v. Philip Morris, Inc.*:

> Insurers usually may elect to litigate tort claims on behalf of their insureds, using the proceeds first to cover medical costs, but they have disdained that option. They want to recover directly from tobacco producers precisely in order to bypass the elements of subrogation actions—principally, that the insurer must demonstrate the existence of a tort and the lack of any defenses to liability. By suing directly, plaintiffs seek to recover even if none of their beneficiaries could prevail in tort litigation.[26]

The issue before us, simply stated, is whether this Court should recognize, as legally cognizable under Delaware law, a claim of this kind, by foreign government plaintiffs, that would strip the defendants of defenses which would otherwise be available to them.[27] The Superior Court held that it should not be, and we agree, for several reasons.

First, it would be both unfair and unsound policy to allow the Foreign Governments, suing in their capacity as health care insurers or providers, to pursue claims on which their injured citizens, had they sued directly, might not be entitled to recover. As Judge Easterbrook aptly put it:

> The food industry puts refined sugar in many products, making them more tasty; as a result, some people eat too

---

25. *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris, Inc.*, 196 F.3d 818, 822 (7th Cir.1999) (citing *United States v. Standard Oil Co.*, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947) (holding that only Congress can authorize a direct claim by the United States to recover the cost of medical care furnished to soldiers)).

26. *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Trust Fund*, 196 F.3d at 821.

27. The Foreign Governments asserted claims under the law of Panama, Brazil, and Delaware. The Superior Court determined that neither of the Foreign Governments had proved the law of Panama or Brazil as they related to their respective claims. Therefore, the Superior Court considered and decided the motions to dismiss under Delaware law. The Foreign Governments have not appealed from the Superior Court's determination to apply Delaware law.

much (or eat the wrong things) and suffer health problems and early death. No one supposes, however, that sweet foods are defective products on this account; chocoholics can't recover in tort from Godiva Chocolatier; it follows that the Funds and the [Blue Cross Blue Shield insurers] can't recover from Godiva either. The same reasoning applies when the defendant is Philip Morris. If, as the Funds and the Blues say, the difference is that Philip Morris has committed civil wrongs while Godiva has not, then the way to establish this is through tort suits, rather than through litigation in which the plaintiffs seek to strip their adversaries of all defenses. Given the posture of these cases, we must assume, as the complaints allege, that the cigarette manufacturers have lied to the public about the safety of their products. But lies matter only if customers are deceived. Whether smokers relied to their detriment on tobacco producers' statements is a central question in tort litigation, a question that cannot be dodged by the device of an insurers' direct suit.[28]

Second, any calculation of damages to the Foreign Governments would be, at best, highly speculative and most difficult to apportion. The Foreign Governments' measure of damages is, and must be, the amounts they expended to provide medical care for smokers afflicted by lung cancer, heart disease and other ailments. Putting aside the problem of determining what portion of those diseases could be attributed to the Tobacco Company Defendants' products, the difficulty for insurers is determining what it means to be injured by paying for medical care. Even if it is assumed that the Foreign Governments might be able to establish the costs that they actually incurred, how is a court to determine what costs the Foreign Governments *would have incurred* had the tobacco products been safer, or had the Tobacco Company Defendants not misrepresented to the plaintiffs' citizens the risks of consuming their tobacco products?

Consider also that because insurers are essentially financial intermediaries, their having paid for, or provided directly, the costs of health care may not have resulted in any damages. Commercial health insurers provide for the costs of smokers' health care by charging higher premiums in advance. If the insurers, using proper actuarial methods, accurately calculate the incremental health care costs attributable to smoking, then the premiums received would adequately reflect those costs and "[the insurers'] books balance whether the costs of care are high or low."[29] Thus, the insurers would suffer no damage unless, and only to the extent, that the actual costs of providing health care to smokers exceeded the premiums received—assuming that such a calculation is possible in the case of Foreign Governments. Although the Foreign Governments are not commercial health insurers, and although the payments received by the Foreign Governments do not take the form of premia paid in advance by policyholders, for purposes of these lawsuits the Foreign Governments are suing in their health insurer (or provider) capacity, and some portion of the taxes they receive on an ongoing basis from their taxpayer citizens would be the functional equivalent of insurance premiums.

██ Third, the Foreign Governments' non-tort claims for unjust enrichment and civil conspiracy do not rest on any sounder footing than their tort claims. We agree with the Superior Court's observation that " 'in the tort setting, an unjust enrichment

---

28. *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Trust Fund,* 196 F.3d at 823.

29. *Id.* at 824.

claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched).' " [30] Moreover, " '[a] claim for civil conspiracy can proceed only where there is a cause of action for an underlying act.' The Foreign Governments have failed to successfully plead any tort supporting their civil conspiracy claim . . . ." [31]

The result reached by the Superior Court is consistent with the overwhelming weight of the federal and state court cases, almost all of which analyze the issue in terms of proximate cause. As the United States Supreme Court ruled in *Holmes v. Securities Investor Protection Corp.*, "[a] plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [i]s generally said to stand at too remote a distance to recover." [32] *United States v. Standard Oil Co.*, a case decided 60 years ago, rests upon that same principle. There, the Supreme Court held that not even the United States government could bring an independent action against an alleged tortfeasor to recover the costs of providing medical treatment for its own servicemen.[33] If the United States government is not permitted assert that claim, on what basis should two foreign governments be permitted to do so?

Not surprisingly, and consistent with the reasoning in *Holmes* and *Standard Oil,* the D.C. Circuit and the Florida Court of Appeals have rejected claims by Guatemala, Nicaragua, Ukraine and Venezuela identical to those brought here.[34] Multitudinous other state and federal appellate courts have unanimously invoked the same rationale in eighteen separate opinions, all holding that third-party payors or providers of medical services, including U.S. States and political subdivisions, hospitals, insurers, ERISA health plans, and a Native American tribe, have no cognizable claims under federal statutory law or state common law to recover medical expenses from the tobacco companies, because the plaintiffs' alleged injuries were entirely derivative of the injuries to the smoker-consumers of the tobacco companies' products.[35]

---

**30.** Superior Court Opinion, 2006 WL 1933740 at *8 (quoting *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir.1999)).

**31.** Superior Court Opinion, 2006 WL 1933740 at *8 (quoting *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 446 (3d Cir.2000)).

**32.** 503 U.S. 258, 268–69, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992).

**33.** 332 U.S. 301, 311–17, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947).

**34.** *Serv. Employees Int'l Union Health & Welfare Fund,* 249 F.3d 1068, 1071 (D.C.Cir. 2001); *Venezuela v. Philip Morris Cos., Inc.* 827 So.2d at 341 (Fla.App.2002), *rev. denied sub nom,* 847 So.2d 978 (Fla.2003).

**35.** *Perry v. Am. Tobacco Co.,* 324 F.3d 845 (6th Cir.2003); *Alabama Coushatta Tribe of* *Texas v. Am. Tobacco Co.,* 46 Fed.Appx. 225, 2002 WL 1939835 (5th Cir. July 15, 2002); *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris, Inc.,* 241 F.3d 696 (9th Cir.2001); *Regence Blueshield v. Philip Morris, Inc.,* 2001 WL 205996 (9th Cir. Feb. 28, 2001); *Allegheny Gen. Hosp. v. Philip Morris, Inc.,* 228 F.3d 429 (3d Cir.2000); *Lyons v. Philip Morris, Inc.,* 225 F.3d 909 (8th Cir.2000); *United Food & Commercial Workers Unions, Employers Health & Welfare Fund v. Philip Morris, Inc.,* 223 F.3d 1271 (11th Cir.2000); *Texas Carpenters Health Benefit Fund v. Philip Morris Inc.,* 199 F.3d 788 (5th Cir.2000); *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris, Inc.,* 196 F.3d 818 (7th Cir.1999); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,* 191 F.3d 229 (2d Cir.1999); *Oregon Laborers–Employers Health & Welfare Trust Fund v. Philip Morris Inc.,* 185 F.3d 957 (9th Cir.1999); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.,* 171 F.3d 912 (3d Cir. 1999); *Owens Corning v. R.J. Reynolds Tobac-*

Because the analysis employed by these federal and state courts is couched in the language of proximate cause, it is not surprising that the Superior Court, which relied on those authorities, did likewise. For doing that the Superior Court can hardly be faulted. Although the result reached by the Superior Court is correct, we conclude, nonetheless, that there is a more fundamental basis for holding that the Foreign Governments' claims for relief are not legally cognizable under Delaware law. The difficulty with employing a proximate cause analysis in this factual setting is that it presupposes that the Tobacco Company Defendants owed, and then violated, a duty running directly to the Foreign Governments. That being the premise, relief was denied because the violation of duty was found to be too remote a cause of any damage to be actionable.

The flaw in that reasoning lies in its predicate—that a duty is owed by the Tobacco Company Defendants, not only to the consumers of their products, but also to any third-party health insurer or health provider of those consumers, whether they be private insurers, ERISA health funds, or governments. No basis in public policy has been shown for judicially creating such a duty, particularly since the insurers are at all times free to seek judicial relief in American courts through the remedy of subrogation. Indeed, courts in several jurisdictions hold that subrogation is the only path through which health insurers may seek to recover.[36] Moreover, and equally if not more fundamentally, the issues underlying the question of whether tortfeasor liability should be extended to the insurers of tort victims are laden with policy concerns, including the effect this new basis for liability would have on the national economy. So complex and intricate are those concerns that they are better addressed by the legislature(s), not by courts applying common law principles.[37]

Accordingly, we hold that although the Superior Court reached the correct result, the better rationale is that in selling their products to citizens of the Foreign Governments who later become injured as users of those products, the Tobacco Company Defendants incurred no legal duty to those Foreign Governments, separate and apart from any duty owed to their citizens.

### Conclusion

The judgments of the Superior Court are affirmed.

---

co Co., 868 So.2d 331 (Miss.2004); *Iowa v. Philip Morris, Inc.,* 577 N.W.2d 401 (Iowa 1998); *Minnesota v. Philip Morris, Inc.,* 551 N.W.2d 490 (Minn.1996); *County of Cook v. Philip Morris, Inc.,* 353 Ill.App.3d 55, 288 Ill.Dec. 389, 817 N.E.2d 1039 (2004), *appeal denied,* 213 Ill.2d 556, 293 Ill.Dec. 861, 829 N.E.2d 786 (2005); *A.O. Fox Mem. Hosp. v. Am. Tobacco Co., Inc.,* 302 A.D.2d 413, 754 N.Y.S.2d 368 (N.Y.App.Div.), *appeal denied,* 100 N.Y.2d 503, 762 N.Y.S.2d 873, 793 N.E.2d 410 (2003); *Steamfitters Local Union No. 614 Health & Welfare Fund v. Philip Mor-*

ris, Inc., 2000 WL 1390171 (Tenn.Ct.App. 2000).

**36.** See, e.g., *County of Cook v. Philip Morris, Inc.,* 353 Ill.App.3d 55, 288 Ill.Dec. 389, 817 N.E.2d 1039, 1048 (2004); *Texas Carpenters Health Benefit Fund v. Philip Morris, Inc.,* 199 F.3d 788 (5th Cir.2000) (holding that "the funds' lawsuits constitute an illegitimate end-run around principles of subrogation.").

**37.** Cf. *United States v. Standard Oil Company,* supra, 332 U.S. at 314–317, 67 S.Ct. 1604.